UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BURTON RICHTER, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CC-PALO ALTO, INC., et al.,<br><br>　　　　Defendants. | Case No. 5:14-cv-00750-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 139, 140, 153 |

Plaintiffs Burton Richter, Linda Collins Cork, Georgia L. May, Thomas Merigan, Alfred Spivack, and Janice R. Anderson (collectively, "Plaintiffs") bring this action derivatively as creditors, and individually, against CC-Palo Alto, Inc. ("CC-PA"), CC-Development Group, Inc. ("CC-DG"), and Classic Residence Management Limited Partnership (the "Corporate Defendants"), as well as members of CC-PA's board of directors, namely Penny Pritzker, Nicholas J. Pritzker, John Kevin Poorman, Gary Smith, Stephanie Fields, and Bill Sciortino (the "Director Defendants"). Plaintiffs are residents at a "continuing care retirement community" known as the Vi at Palo Alto. The Vi is owned and operated by CC-PA, a Delaware corporation with its principal place of business in Palo Alto, California. CC-DG, a Delaware corporation with its principal place of business in Chicago, is CC-PA's corporate parent.

Presently before the court are three summary judgment or partial summary judgment motions: one filed by Plaintiffs (Dkt. No. 153), one filed by the Director Defendants (Dkt. No. 139), and one filed by the Corporate Defendants (Dkt. No. 140). Federal jurisdiction arises pursuant to 28 U.S.C. § 1332.

Having carefully reviewed the relevant pleadings in conjunction with the legal authority which applies to this esoteric area, the court has determined there is no dispute of material fact that CC-PA is not insolvent as a matter of law, and that Plaintiffs cannot prove harm as a result of CC-PA's "upstreaming" of assets to its corporate parent. In light of these determinations, and for the reasons explained below, the motions for summary judgment filed by the Director Defendants and the Corporate Defendants must be granted, and the motion for summary judgment or partial summary judgment filed by Plaintiffs must be denied.[1]

I.  Legal Standard

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. Id. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

---

[1] As demonstrated by the three orders on motions to dismiss filed in this case, the general factual and procedural background is extensive and well-known to the parties. It is not repeated in detail here but referenced where necessary to the summary judgment analysis.

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

II. Discussion

    A. Plaintiffs' Causes of Action

Subsequent to the court's rulings on motions to dismiss, five of Plaintiffs' causes of action remain at issue for summary judgment:

| NUMBER | TITLE | AGAINST |
|---|---|---|
| 11 | Creditor Derivative Claim for Breach of Fiduciary Duties | Director Defendants |
| 12 | Creditor Derivative Claims for Breach of Fiduciary Duties or in the alternative, Aiding and Abetting the Director Defendants' Breaches of Fiduciary Duty | CC-DG |
| 13 | Creditor Derivative Claim for Payment of Unlawful Dividends | Director Defendants |
| 14 | Fraudulent Transfer of Assets | CC-DG |
| 15 | Creditor Derivative Claim for Corporate Waste | Director Defendants |

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

3

Between the three motions, the involved parties cross-move for summary judgment on each cause of action. Since Plaintiffs would bear the evidentiary burden at trial, the Director Defendants and the Corporate Defendants "need only point out an absence of evidence supporting the claim[s]." Celotex Corp., 477 U.S. at 325. If they do so, Plaintiffs overcome the motions only if they go beyond the pleadings and cite to specific evidence creating a genuine dispute of material fact. Id. at 324.

Conversely, Plaintiffs can prevail on their motion for summary judgment only by producing enough evidence to persuade "the court that there is no genuine issue of material fact" on each element of the claims, and that they are entitled to judgment as a matter of law. Id. at 323.3.

### B. Standing

#### i. General Standing Principles

The Director Defendants and the Corporate Defendants challenge Plaintiffs' standing to maintain their claims.

Standing is "the threshold question in every federal case." Warth v. Seldin, 422 U.S. 490, 498 (1975). The doctrine "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 191 (2000). This requirement of standing is jurisdictional and cannot be waived. City of Los Angeles v. Cty. of Kern, 581 F.3d 841, 845 (9th Cir. 2009). The party asserting federal jurisdiction must carry the burden of establishing standing under Article III (DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006)), by showing a basis for standing existing at the commencement of litigation. White v. Lee, 227 F.3d 1214, 1243 (9th Cir. 2000).

Generally, the inquiry critical to determining the existence of standing under Article III of the Constitution is "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Allen v. Wright, 468 U.S. 737, 750-51 (1984) (quoting Warth,

422 U.S. at 498). Three basic elements must be satisfied: (1) an "injury in fact," which is neither conjectural or hypothetical, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). Furthermore, and perhaps most relevant here, the Supreme Court "has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499.

      ii.  Creditor Standing for Derivative Claims

Four of Plaintiffs' claims - 11, 12, 13, and 15 - are brought by Plaintiffs derivatively as creditors of CC-PA. The court has previously identified the legal principles governing these types of claims, and reiterates those principles here.

The most common type of derivative action is one brought by shareholders, which is "an exception to the normal rule that the proper party to bring a suit on behalf of a corporation is the corporation itself, acting through its directors or a majority of its shareholders." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 542 (1984). And like shareholders, equitable considerations give creditors of a corporation standing to pursue derivative claims when a company is insolvent. Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill, 561 F.3d 377, 385 (5th Cir. 2009). "Under Delaware law, a claim alleging the directors' or officers' breach of fiduciary duties owed to a corporation may be brought by the corporation or through a shareholder derivative suit when the corporation is solvent or a creditor derivative suit when the corporation is insolvent." Id.; accord N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 101 (Del. 2007) (explaining that when corporation is solvent, the fiduciary duties owed by directors of a corporation may be enforced by its shareholders, but "[w]hen a corporation is insolvent . . . its creditors take the place of the shareholders as the residual beneficiaries of any increase in value.").

Delaware recognizes two methods of showing insolvency: the "Cash Flow" test or the "Balance Sheet" test. Quadrant Structured Prods. Co. v. Vertin, 102 A.3d 155, 176-77 (Del. Ch.

2014). Under the Cash Flow Test, a corporation is considered insolvent when "it is unable to pay its debts as they fall due in the usual course of business." Geyer v. Ingersoll Publ'ns Co., 621 A.2d 784, 789 (Del. Ch. 1992). Under the Balance Sheet Test, "an entity is insolvent if it has liabilities in excess of a reasonable market value of assets held." Vertin, 102 A.3d at 176.

### iii. Application

Plaintiffs' standing to pursue creditor derivative claims on behalf of CC-PA depends on whether they have produced sufficient evidence to create a dispute of fact that CC-PA was insolvent on the date they commenced this action, February 19, 2014.[2] Quadrant Structured Prods. Co. v. Vertin, 115 A.3d 535, 554 (Del. Ch. 2015) ("Vertin II") ("[T]o maintain standing to sue derivatively, a creditor must establish that the corporation was insolvent at the time the creditor filed suit."). Plaintiffs contend they have done so, and argue that CC-PA was insolvent from December 31, 2011, through December 31, 2016. The Director Defendants and the Corporate Defendants unsurprisingly disagree.

To determine whether Plaintiffs have met their burden of production, the court must further comment on the technicalities of the insolvency test all parties agree is best suited to the circumstances. Despite its name, "the Balance Sheet Test is based on a fair valuation and not based on Generally Accepted Accounting Principles ('GAAP'), which are used to prepare a typical balance sheet." Lids Corp. v. Marathon Inv. Partners, L.P. (In re Lids Corp.), 281 B.R. 535, 540 (Bankr. D. Del. 2002).[3] Thus, unless liquidation in bankruptcy is imminent on the date

---

[2] The Director Defendants and Corporate Defendants also argue that Plaintiffs cannot pursue creditor derivative claims because Plaintiffs have not personally suffered an injury-in-fact. That argument is misplaced at least as to those claims; a creditor derivative action, like a shareholder derivative action, is a means of redressing injuries to a corporation, not individual injuries. See FDIC v. BancInsure, Inc., 675 Fed. App'x 666, 669 (9th Cir. 2017).

[3] In their motion, Plaintiffs argue that "[a] company's GAAP financial statements provide evidence of insolvency for purposes of a motion for summary judgment," citing Vertin II. The court has reviewed Vertin II, however, and finds no legal support for the proposition stated by Plaintiffs. Thus, to the extent Plaintiffs believe financial statements prepared under GAAP can show insolvency without adjustment as required by the Balance Sheet Test, the court rejects the argument.

of valuation, an entity must be valued as a going concern for the purpose of the Balance Sheet Test. Id. at 541. "A 'going concern' is a commercial enterprise actively engaging in business with the expectation of indefinite continuance." Id.

Here, the parties recognize that CC-PA must be valued as a going concern under the Balance Sheet Test because there is no evidence that its liquidation is imminent. Furthermore, the parties agree that CC-PA's assets, as a going concern, must be analyzed using an income approach, which "estimates the value of a company based on its earnings capacity," and, within that approach, using the Discounted Cash Flow ("DCF") method. Shubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.), 348 B.R. 234, 278 (Bankr. D. Del. 2005). For this method, "future earnings are projected and then discounted to present value, adjusted to reflect the risk that such earnings will not materialize." Id.

Plaintiffs' evidence is problematic despite their recognition of the appropriate valuation method. This is because Plaintiffs have not offered any evidence constituting a competent DCF analysis under an income approach – even though their briefing purports to demonstrate such an analysis. Notably, a valuation opinion using the DCF method should focus on CC-PA's *future earnings* as the relevant asset. Id. Plaintiffs' experts, it seems, utilized an asset approach by using CC-PA's GAAP balance sheets and substituting a fair market value of assets and liabilities in place of book value. Id. (describing the asset approach to valuing a going concern). But their analysis is incomplete and flawed as a matter of law. To properly value a going concern using the asset approach, there must be "more than a summation of market values attributable to an entity's various assets." Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.), 56 B.R. 339, 386 (Bankr. D. Minn. 1985). The analysis should "indicate[] the market value of an ongoing business as a whole and thereby include[] an additional element of value that attaches to property, considered in the aggregate, by reason of the property having been assembled for the conduct of the business and the property's fitness for such use." Id. "This additional increment of value reflects in part, not only the business' earning power . . . but the ready

availability of customer lists, established supply lines, and other attributes making it possible for a purchaser to step in and immediately commence operations," including goodwill. Id. The opinions of Plaintiffs' experts fail to account for or even address these real-world items other than the Stanford ground lease, rendering the analysis little more than a restatement of book values from CC-PA's GAAP balance sheets. That is not recognized evidence of insolvency, because "extensive authorities" establish that "the traditional balance sheet test is not a bright-line rule based on GAAP figures." Vertin II, 115 A.3d at 560. The court, therefore, does not consider the opinions of Plaintiffs' experts to be admissible evidence on the question of CC-PA's solvency. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that *would be admissible in evidence*, and show that the affiant or declarant is competent to testify on the matters stated."); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (holding that expert testimony is admissible "only if it is both relevant and reliable" such that the "factual basis, data, principles, methods, or their application" have "a reliable basis in the knowledge and experience of [the relevant] discipline").

Other evidence cited by Plaintiffs does not assist them. From valuations of CC-PA conduct by Duff & Phelps and Milliman, Plaintiffs cherry-pick portions that suit their position without reconciling the accounting principles used with a legally-recognized insolvency analysis. Stated differently, Plaintiffs' arguments based on figures from these reports consist of "apples to oranges" comparisons in accountancy terms. Plaintiffs cannot meet their burden by offsetting actuarial present values against a completed DCF analysis, as they attempt with the Duff & Phelps valuation, because those sets of data cannot be combined in that way. Similarly, insolvency cannot be shown using the actuarial balance sheet calculated as part of the Milliman valuation. Indeed, the disclaimer accompanying that report plainly states it should not be used to determine whether CC-PA is solvent or not. And in any event, Plaintiffs have not shown the portion of the Milliman valuation on which they rely was calculated using the DCF method.

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
8

Furthermore, Plaintiffs have not submitted a competent analysis of insolvency under the Cash Flow Test. If anything, Plaintiffs may be able to show that CC-PA's financial statements show annual losses. But losing money is different from not being able to pay bills as they become due in the usual course of business, and there is no evidence that CC-PA was unable to pay its bills in February, 2014. As such, the court finds that Plaintiffs' purported argument under the Cash Flow Test is an unsupported opinion that cannot be considered on summary judgment.

In sum, the lack of an admissible insolvency analysis is fatal to Plaintiffs' creditor derivative claims. Because the jury would not have sufficient evidence to resolve the issue in Plaintiffs' favor, Plaintiffs have not supported their standing as creditors to bring claims on behalf of CC-PA. For this reason, the Director Defendants and the Corporate Defendants are entitled to summary judgment on causes of action 11, 12, 13 and 15. Plaintiffs' affirmative motion must, in turn, be denied.

### C. Fraudulent Transfer of Assets

The fourteenth cause of action against CC-DG is for fraudulent transfer under California Civil Code §§ 3439.04(a)(1) and 3439.05, and Delaware Code, title 6, §§ 1304(a)(1) and 1305(a). As the court has previously recognized, Plaintiffs allege they are "creditors with claims against CC-PA," and have "unmatured rights to payment." They allege that CC-PA's "upstreaming" of assets was controlled by CC-DG, and was done with the intent to hinder, delay or defraud Plaintiffs.[4]

#### i. Governing Authority

Civil Code § 3439.04(a)(1) states that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith

---

[4] The Corporate Defendants challenge Plaintiffs' Article III standing to bring this claim, and further argue the claim is not ripe. The court, however, finds Plaintiffs have satisfied standing and ripeness requirements because they have at least identified an economic injury under the applicable statutes that is "concrete and particularized," "actual and imminent," and not "conjectural or hypothetical." See Spokeo v. Robins, 136 S.Ct. 1540, 1548 (2016). Whether or not Plaintiffs have evidence to prove a harm, however, is a different question.

actual intent to hinder, delay, or defraud any creditor of the debtor. To prove a violation of § 3439.04(a)(1), a creditor must show: (1) that the creditor has a right to payment from the debtor; (2) the debtor transferred property or incurred an obligation to the defendant; (3) that the debtor transferred the property or incurred the obligation with the intent to hinder, delay, or defraud one or more creditors; (4) that the creditor was harmed; and (5) that the debtor's conduct was a substantial factor in causing the creditor's harm. Judicial Council of California Civil Jury Instructions § 4200 (2018).

Civil Code § 3439.05(a) states that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." To prove a violation of § 3439.05, a creditor must show: (1) the creditor has a right to payment from the debtor; (2) the debtor transferred property or incurred an obligation to the defendant; (3) the debtor did not receive a reasonably equivalent value in exchange for the transfer or obligation; (4) the creditor's right to payment from the debtor arose before the debtor transferred the property or incurred the obligation; (5) the debtor was insolvent at that time or became insolvent as a result of the transfer or obligation; (6) the creditor was harmed; and (7) the debtor's conduct was a substantial factor in causing the creditor's harm. Judicial Council of California Civil Jury Instructions § 4203 (2018).

"A transfer described in Civil Code section 3439.04, subdivision (a)(1) is characterized as actual fraud, and a transfer described in either Civil Code section 3439.04, subdivision (a)(2) or Civil Code section 3439.05 is characterized as constructive fraud." Hasso v. Hapke, 227 Cal. App. 4th 107, 122 (2014).

The language of the Delaware statutes on fraudulent transfer of assets tracks the corresponding California statutes, and the court discerns no meaningful difference between them. Compare Cal. Civ. Code § 3439.04 with Del. Code Ann., title 6, § 1304 and Cal. Civ. Code §

3439.05 <u>with</u> Del. Code Ann., title 6, § 1305.  Accordingly, the court will examine the same elements under California and Delaware law.

    ii.  Application

  The Corporate Defendants argue that Plaintiffs cannot meet their burden to prove each element of a cause of action for fraudulent transfer of assets under California or Delaware law. The court agrees, because Plaintiffs have not produced evidence showing they were harmed by the Corporate Defendants' alleged conduct.

  Unlike the creditor derivative claims, a cause of action for fraudulent transfer of assets requires evidence that Plaintiffs themselves, aside from CC-PA, were damaged by a transfer. See <u>Monastra v. Konica Bus. Machs.</u>, U.S.A., 43 Cal. App. 4th 1628, 1636-37 ("A creditor who is damaged by a transfer described in either section 3439.04 or section 3439.05 can set the transfer aside or seek other appropriate relief . . . ."); see also <u>Fidelity Nat'l Title Ins. Co. v. Schroeder</u>, 179 Cal. App. 4th 834, 841 (2009).  As indicated in the preceding section, this element is also recognized in each of the applicable jury instructions, and Plaintiffs would need to submit proof of personal harm at trial.

  On this record, the court finds that Plaintiffs have not met their burden to show any present harm to them as a result of the "upstreaming" of assets from CC-PA to CC-DG.  Though Plaintiffs dance around admitting this fact in their briefing, the language of the documents governing their residency at the Vi is undisputed.  Pursuant to the Residency Contract, the entrance fees Plaintiffs made to CC-PA are characterized as "loans" to CC-PA, portion of which is to be repaid to the resident or the resident's estate when the Contract terminates.  The Residency Contract specifies that a resident's Contract terminates when the resident decides to leave the Vi or when the resident passes away.

  The terms of the entrance fee "loan" are governed by an "Entrance Fee Note," which residents are given at the time of payment.  Upon termination of the Contract, the repayable portion of the entrance fee is due at the earlier of: (i) fourteen days after resale of the resident's

apartment; or (ii) ten years after termination. The amount of the entrance fee that is repaid depends on the date the resident entered the community, as the repayable percentage has decreased over time. About 70% to 90% of the entrance fee amount is refunded to the resident upon termination in accordance with the above conditions.

In light of these contractual terms, Plaintiffs have not produced any evidence upon which a reasonable jury could find they have experienced personal harm as creditors of CC-PA. Indeed, in Plaintiffs' response to the Corporate Defendants' motion raising this argument, they fail to identify that any of their loans have come due without repayment. Thus, avoiding or enjoining future transfers could not compensate Plaintiffs for any injury because the evidence does not show that Plaintiffs, or any of them, are presently owed repayment under the Residency Contract and Entrance Fee Note. Though Plaintiffs repeatedly cite to CC-PA's "upstreaming" to CC-DG and conclude they were harmed by that practice, their unsupported statements are simply not enough to create a dispute of fact, particularly when the cause of action they assert requires evidence of a personal injury as an element of the claim. See Matsushita Elec. Indus. Co., 475 U.S. at 587.

Furthermore, a cause of action for constructive fraud under California Civil Code § 3439.05 and Delaware Code Annotated, title 6, § 1305, requires that Plaintiffs show CC-PA was insolvent or became insolvent as a result of a transfer. Given the lack of evidence on that issue as already discussed above, a reasonable jury could likewise not find in Plaintiffs' favor on a fraudulent transfer claim based on § 3439.05 or § 1305.

Thus, Plaintiffs have not satisfied their burden to overcome the Corporate Defendants' summary judgment motion on the cause of action for fraudulent transfer of assets. On that basis, the Corporate Defendants' motion will be granted and the Plaintiffs' motion will be denied.

III. ORDER

Based on the foregoing:

1. The Director Defendants' Motion for Summary Judgment (Dkt. No. 139) is GRANTED;

2. The Corporate Defendants' Motion for Summary Judgment (Dkt. No. 140) is GRANTED;

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
12

and

3. Plaintiffs' Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 153) is DENIED.

4. All other matters, including the upcoming trial dates and deadlines, are TERMINATED and VACATED.

Judgment will be entered in favor of Defendants, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: February 14, 2019

EDWARD J. DAVILA
United States District Judge