1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                  NORTHERN DISTRICT OF CALIFORNIA

7                          SAN JOSE DIVISION

8

9    LINDA COLLINS CORK, et al.,              Case No.  5:14-cv-00750-EJD

              Plaintiffs,

10                                            **ORDER GRANTING IN PART AND**
      v.                                      **DENYING IN PART MOTIONS TO**
11                                            **DISMISS THIRD AMENDED**
                                              **COMPLAINT**
      CC-PALO ALTO, INC., et al.,
12                                            Re: Dkt. Nos. 282, 283
              Defendants.

13

14          Plaintiffs Linda Collins Cork, Georgia L. May, Thomas Merigan, and Janice R. Anderson

15   (collectively, "Plaintiffs") bring this suit individually, and on behalf of a proposed class, against

16   CC-Palo Alto, Inc. ("CC-PA"), CC-Development Group, Inc. ("CC-DG"), and Classic Residence

17   Management Limited Partnership ("CRMLP"), collectively referred to as "Defendants." CC-PA

18   filed a motion to dismiss the Third Amended Complaint ("CC-PA Mot.") and CC-DG and

19   CRMLP filed a separate motion to dismiss ("Mot."). Dkt. Nos. 282, 283. Both motions are

20   brought pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). *Id.* Plaintiffs filed

21   oppositions (Dkt. Nos. 285, 286), and Defendants filed replies (Dkt. Nos. 289-291). The Court

22   finds it appropriate to take the motions under submission for decision without oral argument

23   pursuant to Civil Local Rule 7-1(b). Based on all pleadings filed to date, the Court will grant in

24   part and deny in part Defendants' motions to dismiss.

25

26

United States District Court
Northern District of California

# I.     BACKGROUND[1]

## A.     Continuing Care Retirement Communities

"Continuing care retirement communities," or "CCRCs," are a specialized kind of residential retirement community, offering elderly residents a flexible "continuum of care" as they age. TAC ¶ 4. Incoming residents typically live independently in their own apartment when they first enter the community. *Id*. Should a resident come to require a greater degree of care, CCRCs also provide on-site assisted living, memory support, and skilled nursing facilities. *Id*.

## B.     The Parties

Plaintiffs are residents of a CCRC known as the Vi at Palo Alto (hereinafter "the Vi"). *Id*. ¶ 2. The Vi is owned and operated by CC-PA, a Delaware corporation with its principle place of business in Palo Alto, California. *Id*. ¶ 26. CC-DG, a Delaware corporation with its principle place of business in Chicago, is CC-PA's corporate parent. *Id*. ¶ 27. CC-DG operates nine other CCRCs throughout the United States in addition to the Vi. *Id*.

CC-DG is the general partner of CRMLP and allegedly "controls" CRMLP. *Id*. ¶ 28. CRMLP, which is based in Chicago, provides the day-to-day management and operation at the Vi and sets its budgets with input from CC-DG. *Id*. CRMLP acts as the agent of CC-PA and is responsible for the financial management of the community. *Id*. ¶ 29. CRMLP prepares budgets and financial reports. *Id*. CC-DG, CC-PA, and CRMLP have significant overlapping directors, officers, and/or partners. *Id*. CRMLP oversees the transfer of funds between CC-PA and CC-DG. *Id*.

Plaintiffs allege that Defendants entered into a conspiracy in furtherance of the wrongful acts alleged in the TAC, as well as aided and abetted each other in the commission of wrongful acts alleged in the TAC. *Id*. ¶¶ 30-31. Plaintiffs also allege that CC-PA acted as the alter ego of CC-DG. *Id*. ¶ 32.

---

[1] The Background is a brief summary of the allegations in the Third Amended Complaint ("TAC").

United States District Court
Northern District of California

### C.    The Residency Contract and Entrance Fees

To live at the Vi, residents enter into a nonnegotiable continuing care contract with CC-PA referred to as a "Refundable Residency Contract" (hereinafter "Residency Contract"). *Id*. ¶¶ 12, 13, 53. Pursuant to the Residency Contract, residents agree to "loan" CC-PA money in the form of an "Entrance Fee," the terms of which are stated in a nonnegotiable "Entrance Fee Note." *Id*. ¶¶ 12-13.[2] The Entrance Fees made to CC-PA can range from several hundred thousand to several million dollars. *Id*. ¶ 12.

CC-PA requires a percentage of the loan to be "forfeited" to CC-PA over the first 10 months of the resident's occupancy. *Id*. ¶ 13. The percentage to be forfeited ranges from 10% to 40%, depending on the year the resident enters the Vi Community. *Id*. The remainder of the loan, which ranges from 60% to 90% of the Entrance Fee, is repayable or refundable to residents. *Id*. The Vi regularly used the term "refundable" and "refund" when explaining to prospective residents and residents that they would be repaid most of their Entrance Fees, and portrayed the Entrance Fees as secure. *Id*. ¶¶ 7, 59. In addition to the one-time Entrance Fee, each resident is required to pay monthly fees. *Id*. ¶ 57.

A Residency Contract terminates upon the resident's decision to leave the Vi Community or at death. *Id*. ¶ 59. CC-PA unconditionally agreed that upon termination of the Residency Contract, it will repay the Entrance Fee at the earlier of (a) fourteen days after resale of the resident's unit or (b) ten years after termination. *Id*. Plaintiffs were willing to enter into the Residency Contracts because they were "promised that a large percentage of the Entrance Fees would be unconditionally refunded to their heirs or estates after they passed away, or directly to them if they left the Vi at Palo Alto before they passed away." *Id*. ¶ 14; *see also id*. ¶ 55 ("Plaintiffs made these loans because they were promised that 70%-90% of these fees were

---

[2] Other paragraphs in the TAC refer to a "Promissory Note." *See* TAC ¶¶ 38, 41, 44, 48, 55, 56, 59, 63, 65, 98, 147, 202. Plaintiffs appear to use the terms "Entrance Fee Note" and "Promissory Note" interchangeably.

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
3

1    **refundable** upon their departure from the Vi at Palo Alto." (emphasis in original))

2          Plaintiffs allege that the Residency Contract and Entrance Fee Note together constitute a

3    "refundable contract" within the meaning of California law governing CCRCs (the "CCRC Law"),

4    specifically Health and Safety Code section 1771(r)(2), and therefore CC-PA, a statutorily defined

5    "provider," was required to maintain a refund reserve pursuant to sections 1792.6(a) and 1793(a).

6    *Id*. ¶¶ 15-16, 62.[3] Defendants also acknowledged a reserve requirement in their marketing

7    materials. *Id*. ¶ 17. Plaintiff Linda Cork in particular was told by CC-PA employee Barry Johnson

8    that her Entrance Fee payment "would remain locally with CC-PA, and would not be transferred

9    between entities or otherwise." *Id*. ¶ 64.

10         Nevertheless, CC-PA failed to maintain reserves and instead, transferred over $216 million

11   "upstream" to CC-DG without ever informing Plaintiffs of its intention to do so. *Id*. ¶¶ 18, 20. CC-

12   PA never disclosed to Plaintiffs that it did not maintain reserves in trust, and this failure to

13   disclose allegedly constitutes a violation of Health & Safety Code § 1793(f). *Id*. ¶¶ 62, 64. As a

14   result of the upstreaming, CC-PA is in a "financially precarious position, and financially incapable

15   of honoring all debts to" Plaintiffs. *Id*. ¶18. As of December 31, 2014, CC-PA had a stockholders'

16   deficit of more than $315 million and owed Plaintiffs over $462 million. *Id*. ¶ 20. As of December

17   31, 2019, the amount owed for refunds has grown to over $476.5 million. *Id*. ¶ 12. CC-DG has

18   disclaimed any obligation to repay Entrance Fees. *Id*. ¶ 20.

19         The CC-PA Board of Directors has failed to address the issues described above. *Id*. ¶ 84.

20   Further, CC-PA has failed to hold formal Board Meetings. *Id*. ¶ 85. Instead, the CC-PA Board

21   improperly acted by unanimous written consent to "legalize illegal actions." *Id*. ¶¶ 85-88. CC-DG

22   and CC-PA also failed to comply with a Health & Safety Code requirement to designate at least

23   one resident representative to their Boards. *Id*. ¶¶ 90-91 (citing Cal. Health & Safety Code §

24   1771.8).

25

26

27   [3] All statutory references are to California law.

28

United States District Court
Northern District of California

### D.      Plaintiffs' Causes of Action

Plaintiffs assert the following claims against all Defendants unless indicated otherwise:  (1) financial abuse of elders in violation of Welfare and Institutions Code § 15610.30; (2) concealment in violation of Defendants' fiduciary duties; (3) negligent misrepresentation; (4) breach of fiduciary duty and constructive trust; (5) violation of the Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750; (6) violation of Business and Professions Code § 17200-restitution and disgorgement; (7) violation of Business and Professions Code §17200-injunctive relief; (8) breach of contract against CC-PA only; (9) breach of the implied covenant of good faith and fair dealing against CC-PA only; (10) declaration of the rights and responsibilities with respect to compliance with Health and Safety Code §§ 1771(r)(2), 1792.6 and 1793(f); and (11) fraudulent transfer of assets in violation of  the Uniform Fraudulent Transfer Act as codified by Delaware Code, Title 6, § 1304(a) and Civil Code § 3439.04 against CC-DG only.

### E.      Procedural History

Plaintiffs initiated this suit in February of 2014, and Defendants moved to dismiss. The Court granted the motion because Plaintiffs failed to allege an injury in fact. Dkt. No. 55. Plaintiffs filed a First Amended Complaint, and again, Defendants moved to dismiss for lack of Article III standing and for failure to state a claim upon which relief can be granted. The Court dismissed the following claims for lack of Article III standing:  elder abuse, breach of fiduciary duty and constructive trust, violations of the Business and Professions Code, breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Order Granting Defendants' Motions to Dismiss ("Order") filed March 31, 2016, Dkt. No. 88.

In addition to addressing Article III standing, the Court considered Defendants' various Federal Rule of Civil Procedure 12(b)(6) challenges to Plaintiffs' claims. The Court held that the claim for concealment was legally deficient because Plaintiffs failed to allege (1) how they would have acted differently had the omitted information regarding transfer of Entrance Fees to CC-DG been disclosed to them and (2) a cognizable injury. *Id*. at 25-26. The Court held that the claim for

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

negligent misrepresentation was legally deficient because Plaintiffs had not plausibly alleged falsity, reliance and damages. *Id*. at 27-28. The Court held that the claim for violations of the CLRA was not pled with particularity as required by Federal Rule of Civil Procedure 9(b); failed to allege that the quality of services rendered was materially different from what was promised; failed to allege that Defendants' advertising was misleading; and failed to allege reliance and damages. *Id*. at 28-29. The Court dismissed the claim for declaratory judgment for three reasons: (1) because Plaintiffs lacked Article III standing, there is no controversy relating to the rights and duties of the respective parties; (2) the Court's finding that the Residency Contract is a refundable contract under California law clarified any ambiguity as to Defendants' statutory obligations, rendering the declaratory relief claim unnecessary and duplicative; and (3) it would be improper for the Court to declare the parties' respective rights and obligations because in the Court's view, the California Department of Social Services ("DSS") is best equipped to make initial assessments regarding Defendants' compliance – or lack thereof – with the relevant law. *Id*. at 29-31. The Court dismissed the claims above without leave to amend and dismissed the remaining derivative claims with leave to amend. *Id*. at 34-35.

Plaintiffs filed a Second Amended Complaint and Defendants moved to strike claims the Court previously dismissed without leave to amend and to dismiss the remaining claims. The Court granted the motion to strike, and denied the motion to dismiss the remaining claims, except for a portion of the twelfth cause of action for breach of fiduciary duties. Dkt. No. 105. The Court later granted summary judgment in favor of Defendants on the remaining claims and entered judgment accordingly ("Summary Judgment Order"). Dkt. Nos. 236-37.

Plaintiffs appealed both the Order and the Summary Judgment Order. The Ninth Circuit affirmed the Summary Judgment Order on the derivative claims and vacated and remanded for further proceedings on the remaining claims. *Cork v. CC-Palo Alto, Inc.*, 818 F. App'x 595 (9th Cir. 2020), Dkt. No. 267. On the issue of Article III standing, the Ninth Circuit held that the statutes at issue were established to protect Plaintiffs' concrete interest in "contracted-for financial

United States District Court
Northern District of California

security," and that Plaintiffs had alleged actual harm to that interest based on Defendants' failure to maintain a refund reserve. *Id*. at 3-4. Further, the Ninth Circuit concluded that Health & Safety Code Section 1793.5(d) "clearly affords [Plaintiffs] a private right of action in circumstances that may exist in this case." *Id*. at 4. The Ninth Circuit reasoned that under section 1793.5(d), Plaintiffs' ability to sue depends on whether Defendants "abandoned" the contractual obligations, and that this assessment turned, in part, on whether the contracts are "refundable," as defined in Section 1771(r)(2). *Id*. Because this Court had held the contracts are "refundable," the Ninth Circuit reversed the dismissal of the first ten claims. *Id*. at 5-7. The Ninth Circuit noted that after the Court's dismissal, the DSS issued an opinion letter concluding that CC-PA's contracts are not "refundable contracts," but the Ninth Circuit declined to decide in the first instance whether that opinion is correct. *Id*. at 5-6. Finally, the Ninth Circuit affirmed as to the derivative claims, but reversed as to the fraudulent transfer of assets claim. *Id*. at 7.

Following remand, Plaintiffs filed the TAC. Defendants seek dismissal of all but the fraudulent transfer of assets claim, raising many of the challenges they previously made to the earlier version of the complaint.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri*). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). A claim has

2    facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3    reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

4         In evaluating the complaint, the court must generally accept as true all "well-pleaded

5    factual allegations." *Iqbal*, 556 U.S. at 664. The court must also construe the alleged facts in the

6    light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. Of Carpenters &*

7    *Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (the court must "draw all reasonable inferences

8    in favor of the nonmoving party" for a Rule 12(b)(6) motion). The court, however, "does not have

9    to accept as true conclusory allegations in a complaint or legal claims asserted in the form of

10   factual allegations." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150-51 (9th Cir. 2016) (citing *Bell*

11   *Atl. Corp.*, 550 U.S. at 555-56).

12        Claims that sound in fraud are subject to a heightened pleading standard. Fed. R. Civ. Proc.

13   9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

14   constituting fraud or mistake."); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-1104 (9th Cir.

15   2003) (recognizing that claims "grounded in fraud" or which "sound in fraud" must meet the Rule

16   9(b) pleading standard, even if fraud is not an element of the claim). The allegations must be

17   "specific enough to give defendants notice of the particular misconduct which is alleged to

18   constitute the fraud charged so that they can defend against the charge and not just deny that they

19   have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

20        When deciding whether to grant a motion to dismiss, the court generally "may not consider

21   any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d

22   1542, 1555 n.19 (9th Cir. 1990). The court may, however, consider material submitted as part of

23   the complaint or relied upon in the complaint, as well as material subject to judicial notice. *See*

24   *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). The Ninth Circuit has

25   recognized that the district court "need not . . . accept as true allegations that contradict matters

26   properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d

27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                                    8

1   979, 988 (9th Cir. 2001).

2       In the event that a motion to dismiss is granted, "leave to amend should be granted 'unless

3   the court determines that the allegation of other facts consistent with the challenged pleading could

4   not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.

5   1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

6   1986)).

7   **III.    DISCUSSION**

8       **A.    Request for Judicial Notice**

9       Defendants request judicial notice of the opinion letter referred to in the Ninth Circuit's

10  decision, namely the April 23, 2016, letter from the California Department of Social Services

11  ("DSS Letter"), to Ms. Stephanie Fields, Ms. Tara Cope, and Mr. Gary Smith, which states in

12  pertinent part, "The Department does not require refund Reserves under Section 1792.6 because

13  the [CC-PA] contracts are not refundable contracts." Defs.' Req. for Judicial Notice at 2, Dkt. No.

14  282-1. Plaintiffs object to the Court taking judicial notice of the DSS Letter on three grounds:

15          First, DSS is a creature of the executive branch in California. DSS'
        job is not to interpret the statutes at issue in this case, but instead to
16      enforce the law. The letter directly contradicts the prior determination
        by this Court that the contracts at issue are refundable, in a roundabout
17      attempt to undermine this Court's ruling.

18          Second, the determination of whether the contracts at issue are
        refundable is plainly disputable, as both the DSS and this Court have
19      come down on opposite sides of the issue. As such, it would be
        inappropriate to judicially notice these documents for any purpose
20      other than the acknowledgement of their existence.

21          Third, these documents have nothing to do with Plaintiffs
        complaint, and certainly do not rely on them. *See Parinno* 146 F.3d
22      at 705-06. Because Exhibit A is not a document whose authenticity is
        not contested and relied upon by the third amended complaint, it is
23      inappropriate to judicially notice.

24  Pls.' Opp'n to Defs.' Request for Judicial Notice at 2, Dkt. No. 285-1.

25      Federal Rule of Evidence 201 allows a court to take judicial notice of adjudicative facts

26  "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready

27  Case No.: 5:14-cv-00750-EJD

    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                                     9

United States District Court
Northern District of California

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.

Evid. 201(b)(2). The Court will take judicial notice of the fact of the DSS Letter because it was

issued by a government department and Plaintiffs do not dispute its authenticity. *See Cal.*

*Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) (taking

judicial notice of a letter from a public agency for the existence of that letter's contents). The

Ninth Circuit has cautioned, however, that "[j]ust because the document itself is susceptible to

judicial notice does not mean that every assertion of fact within that document is judicially

noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Here, whether the CC-PA Residency Contract is a refundable contract within the meaning of the

Health & Safety Code is the core dispute. Therefore, although the Court will take judicial notice of

the DSS Letter, the Court does not assume that the substance of the DSS Letter is necessarily

correct.

     The request for judicial notice is granted.

### B.    First Cause of Action for Financial Elder Abuse

     The first cause of action is for financial elder abuse. TAC ¶ 118. Financial elder abuse

occurs when a person or entity: "[t]akes, secretes, appropriates, obtains, or retains real or personal

property of an elder. . . for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst.

Code § 15610.30(a)(1). The "wrongful use" element is satisfied "if, among other things, the

person or entity takes, secretes, appropriates, obtains, or retains the property and the person or

entity knew or should have known that this conduct is likely to be harmful to the elder or

dependent adult." *Id*. §15610.30(b). A person or entity "[t]akes, secretes, appropriates, obtains, or

retains real or personal property" when an elder or dependent adult is "deprived of any property

right, including by means of an agreement, donative transfer, or testamentary bequest, regardless

of whether the property is held directly or by a representative of an elder or dependent adult." *Id*. §

15610.30(c).

     Defendants contend that the elder abuse claim fails as a matter of law because Plaintiffs (1)

Case No.: 5:14-cv-00750-EJD

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1    fail to plead a property interest and (2) fail to plead that they have been deprived of a property

2    interest. CC-DG and CRMLP separately contend that Plaintiffs fail to plead sufficient facts to hold

3    them liable for aiding and abetting the alleged financial elder abuse.

4                        **1. Property Interest**

5           Plaintiffs allege that Defendants took, secreted, appropriated, obtained and/or retained

6    "money belonging to Plaintiffs." TAC ¶ 120. Defendants allegedly took Plaintiffs' money by

7    "improperly collecting hundreds of millions of dollars in 'Entrance Fees' through CC-PA and

8    transferring those funds upstream to CC-PA's corporate parent, CC-DG, thus impairing Plaintiffs'

9    and the Class' security interest in those fees and thus also removing funds from CC-PA that were

10   supposed to have remained at CC-PA to provide reserves held in trust and services to Plaintiffs

11   and the Class." *Id*.

12          CC-PA argues that the right to repayment of the Entrance Fees has not accrued, and

13   therefore Plaintiffs have not alleged a property interest for purposes of a financial elder abuse

14   claim. This argument, however, is more of a challenge to the "deprivation" element than the

15   "property" element of a claim for financial elder abuse. Plaintiffs have identified a form of

16   property to which they are allegedly entitled. *See* TAC ¶ 122 ("Plaintiffs . . . were deprived of a

17   property right, insofar as Plaintiffs' . . . Entrance Fees have been placed at risk and their security

18   interest has been impaired."). The Court finds that Plaintiffs' allegations are sufficient to plausibly

19   allege "property" for purposes of the financial elder abuse statute, bearing in mind that the elder

20   abuse statute is to be broadly construed to effectuate its purpose of protecting elders. *See Keshish*

21   *v. Allstate Ins. Co.*, 2012 WL 12887077, at *7 n.36 (C.D. Cal. July 30, 2012) (quoting *Abernathy*

22   *v. Cty. of Marin*, 2006 WL 418486, at *19 (1st Cir. 2006) (elder abuse statute "should not be

23   narrowly understood to limit actionable financial abuse to the consummated dispossession of a

24   tangible item of property. Such a construction is contrary to California's broad concept of property

25   and the Elder Abuse Act's goal of protecting a vulnerable class of persons.")). Whether Plaintiff

26   have plausibly alleged they have been deprived of their property is a separate issue and is

27   Case No.: 5:14-cv-00750-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

11

United States District Court
Northern District of California

1    discussed below.

2    **2. Deprivation of Property**

3    A "deprivation" is a "taking away of anything enjoyed; dispossession, loss." *Mahan v.*

4    *Charles W. Chan Ins. Agency, Inc.*, 14 Cal. App. 5th 841, 861 (2017). According to CC-DG and

5    CRMLP, there has been no "deprivation" because Plaintiffs willingly paid the Entrance Fees to

6    CC-PA. Mot. at 9. This argument, however, overlooks Plaintiffs' allegation that the deprivation

7    occurred when CC-PA transferred the Entrance Fees to CC-DG and impaired Plaintiffs' security

8    interest in those Fees.

9    Defendants separately argue that there has been no deprivation because Plaintiffs' Entrance

10   Fees have not been taken away, dispossessed or lost. CC-PA Mot. at 5-6.  In Defendants' view,

11   Plaintiffs allege, at most, that their "security interest" in the Entrance Fees has been "impaired" or

12   placed "at risk" and that this allegation is insufficient to plead a plausible claim of elder financial

13   abuse because Plaintiffs have not suffered an actual financial loss.[4] CC-PA Mot. at 6; *see also*

14   Mot. at 10. Moreover, Defendants contend that Plaintiffs fail to plead how their future repayment

15   of the Entrance Fees has been impaired. In other words, Defendants contend that Plaintiffs fail to

16   allege any loss in the "value of their future interest or that they have suffered any harm in

17   connection with their right to partial repayment of the Entrance Fees." Mot. at 10-11.

18   Plaintiffs counter that their allegations are sufficient and that what Defendants are really

19   raising is a factual dispute that is inappropriate at the pleading stage. *See* Pls.' Opp'n to CC-PA's

20   Mot. at 8 ("This assertion is the source of the factual dispute between the Parties, and is not a

21   justification for dismissing Plaintiffs' claim."). The Court agrees. Plaintiffs' allegations support a

22   plausible inference that CC-PA took, appropriated, and retained their Entrance Fees. Plaintiffs

23   allege that the Entrance Fees were to be retained by CC-PA in a reserve fund, but that CC-PA

24

25   _____

26   [4] To "impair" is property is to diminish the value of property or of a property right. CC-PA Mot. at
     6 (citing *Black's Law Dictionary* (10th ed. 2014)).

27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                            12

United States District Court
Northern District of California

upstreamed them to CC-DG without ever informing Plaintiffs of its intention to do so. Plaintiffs allege that CC-PA is in a financially precarious position and incapable of honoring all debts to Plaintiffs, and that CC-DG has disclaimed any obligation to repay the Entrance Fees. Construing these facts in the light most favorable to Plaintiffs, Defendants' actions may have resulted in a "taking away," dispossession or loss.

Defendants contend that the financial elder abuse fails because Plaintiffs are required, but have failed, to allege they suffered a financial loss. Plaintiffs implicitly argue that they are not required to plead a financial loss, stating: "the idea that no deprivation or harm has befallen Plaintiffs is in direct contradiction of the findings of the Ninth Circuit that held that 'failing to maintain a refund reserve harms Residents by putting them in the distressing position of choosing between vacating the Vi and potentially risking non-repayment or continuing to live at the Vi in a state of perceived financial insecurity.'" Pls.' Opp'n to C-PA' Mot. at 6 (citing *Cork*, 818 F. App'x. at 597). None of the parties have cited to, nor is this Court aware of, any published decision that addresses this issue.

In the absence of a published decision on point, the Courts concludes that Plaintiffs plausibly allege a deprivation of property for two reasons. First, the financial elder abuse statute does not explicitly require that the deprivation of property cause financial loss. Rather, the language of the statute is broad and suggests a financial loss is not required insofar as it only requires that the person or entity committing the financial abuse "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Cal. Welf. & Inst. Code § 5610.30(b). Conduct "likely to be harmful" may take many forms; it is not necessarily limited to conduct causing financial loss. Second, on appeal, the Ninth Circuit held that the alleged failure to maintain a refund reserve harms Plaintiffs, albeit in the context of analyzing Article III standing. *Cork*, 818 F. App'x. at 597.

### 3. Alleged Wrongful Use

Plaintiffs also allege sufficient facts to show the requisite "wrongful use." Rather than

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1     maintaining the Entrance Fees in a reserve fund, CC-PA paid "unlawful dividends" to CC-DG, an

2     entity that has represented it has no obligation to repay Entrance Fees. TAC ¶ 20. Indeed CC-PA's

3     audited year-end financial statements do not even show CC-DG owing any financial obligations to

4     CC-PA. *Id*. Thus, Plaintiffs will be repaid their Entrance Fees "only if CC-DG <u>voluntarily</u> chooses

5     to pay the obligations of CC-PA." *Id*. (emphasis in original). This has left CC-PA without

6     sufficient funds to pay its debts. *Id*. ¶ 9, 81-82, 120. CC-PA's financial condition is so precarious

7     that it can pay its debts only by securing periodic, voluntary cash infusions from CC-DG. *Id*. ¶ 9.

8          In sum, Plaintiffs' TAC plausibly alleges a claim for financial elder abuse against CC-PA.[5]

9                    **4. CC-DG and CRMLP**

10        Liability for elder abuse extends to any person who "assists" in the "taking, secreting,

11    appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a

12    wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 5610.30(a)(2). The

13    term "assists" in this provision has been interpreted to mean aiding and abetting. *Das v. Bank of

14    America, N.A.,* 186 Cal. App. 4th 727, 744-745 (2010).[6] Under California common law, liability

15    may be imposed for aiding and abetting a tort when the person "(a) knows the other's conduct

16    constitutes a breach of duty and gives substantial assistance or encouragement to the other to so

17    act or (b) gives substantial assistance to the other in accomplishing a tortious result and the

18    person's own conduct, separately considered, constitutes a breach of duty to the third person." *Id*.

19    at 744 (internal quotation marks and citations omitted). The "substantial assistance" requirement

20    for aiding and abetting claims "necessarily requires a defendant to reach a conscious decision to

21    participate in tortious activity for the purpose of assisting another in performing a wrongful act."

22    *Diaz v. Intuit, Inc.*, 2018 WL 2215790, at *8 (N.D. Cal. May 15, 2018).

23    ─────────────────────

24    [5] Plaintiffs' elder abuse claim is based upon both a "wrongful use" and "intent to defraud." TAC
      ¶¶120-21. Because Plaintiffs have sufficiently alleged "wrongful use," the Court finds it
25    unnecessary to consider the sufficiency of the "intent to defraud" allegations at this time.

26    [6] Plaintiffs' more generalized aiding and abetting allegations as to other claims is discussed
      separately in Section "K" of this Order.
27    Case No.: 5:14-cv-00750-EJD
      ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
28                                        14

United States District Court
Northern District of California

1          Here, Plaintiffs allege that Defendants "assisted" one another in "taking, secreting,

2    appropriating, obtaining and/or retaining money belonging to Plaintiffs . . . for a wrongful use and

3    with the intent to defraud and when they knew or should have known that this conduct is likely to

4    be harmful to Plaintiffs. TAC ¶ 121. Plaintiffs allege that "CC-DG created CC-PA for the purpose

5    of inducing Plaintiffs and the Class to loan substantial Entrance Fees to CC-PA, which it would

6    then move upstream to CC-DG." *Id*. "This kept CC-PA dangerously underfunded and in a state of

7    financial distress and dependent on voluntary infusions of funds from CC-DG." *Id*. Plaintiffs

8    further allege that CRMLP harmed elderly residents by assisting in the taking, hiding,

9    appropriating, obtaining, or retaining of Entrance Fees. *Id*. ¶ 123.

10          Defendants argue that mere acceptance of Plaintiffs' Entrance Fees is insufficient to show

11    assistance in the alleged elder financial abuse, citing *Das v. Bank of America, N.A.*, 186 Cal. App.

12    4th 744-45 (concluding that a bank providing ordinary services that effectuate financial abuse by a

13    third party may be found to have "assisted" the financial abuse only if the bank knew of the third

14    party's wrongful conduct."). However, Plaintiffs allege more than mere acceptance of the

15    Entrance Fees. ¶ 28. Plaintiffs allege that CRMLP provides the day-to-day management and

16    operation at the Vi and sets its budgets with input from CC-DG. TAC ¶ 28. CRMLP allegedly acts

17    as the agent of CC-PA and is responsible for the financial management of the community and for

18    overseeing the transfer of funds between CC-PA and CC-DG. *Id*. ¶ 29. CRMLP prepares budgets

19    and financial reports. *Id*. Plaintiffs also allege that CC-DG, CC-PA, and CRMLP have significant

20    overlapping of directors, officers, and/or partners. *Id*. Plaintiffs allege that "CC-DG developed and

21    at all times has operated CC-PA under a business plan to use CC-PA as a device to return all of

22    CC-DG's invested capital in CC-PA and to funnel the proceeds of Entrance Fees to CC-DG on a

23    *non-recourse basis*, for CC-DG's and its shareholders' benefit," and that CRMLP assisted in

24    implementing this plan. *Id*. ¶ 9 (emphasis added); *see also id.* ¶ 221. When construed in the light

25    most favorable to Plaintiffs, these allegations plausibly allege CC-DG and CRMLP assisted CC-

26    PA in the alleged deprivation of property for a wrongful purpose and knew or should have known

27    Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                                      15

United States District Court
Northern District of California

1  that their conduct was likely to be harmful to Plaintiffs.

2      Defendants CC-DG and CRMLP's motion to dismiss the financial elder abuse claim is

3  denied.

4      **C.   Second Cause of Action for Concealment**

5      Plaintiffs' Second Cause of Action alleges concealment based on the failure to disclose

6  facts related to CC-PA's assessment of the monthly fees and management of the Entrance Fees.

7      To state a claim for concealment, a plaintiff must allege: (1) the concealment or

8  suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff;

9  (3) that the defendant intended to defraud the plaintiff by intentionally concealing or suppressing

10  the fact; (4) that the plaintiff was unaware of the fact and would have acted differently if he or she

11  had known of the concealed or suppressed fact; and (5) that the plaintiff sustained damage as a

12  result of the concealment or suppression of the fact. *Graham v. Bank of America, N.A.*, 226 Cal.

13  App. 4th 594, 606 (2014).

14      Defendants seek dismissal of the concealment claim on four grounds:  failure to plead

15  fraud with particularity; failure to plead reliance; failure to plead loss; and failure to plead a duty

16  to disclose. Defendants' first two arguments are compelling for the reasons discussed below, and

17  therefore the Court finds it unnecessary to address Defendants' remaining two arguments.

18          **1. Specificity**

19      To plead fraud by omission with specificity, a plaintiff "must describe the content of the

20  omission and where the omitted information should or could have been revealed, as well as

21  provide representative samples of advertisements, offers, or other representations that plaintiff

22  relied on to make her purchase and that failed to include the allegedly omitted information."

23  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). Where the fraud was

24  allegedly perpetrated by a corporation, a plaintiff must also "allege the names of the employees or

25  agents who purportedly made the fraudulent representations or omissions, or at a minimum

26  identify them by their titles and/or job responsibilities." *UMG Recordings, Inc. v. Glob. Eagle*

27  Case No.: 5:14-cv-00750-EJD
   ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                    16

United States District Court
Northern District of California

1  *Entm't, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).

2         Here, Plaintiffs identify with particularity the following "facts" that all three Defendants

3  allegedly failed to disclose:

4                 a. CC-PA intended to upstream Plaintiffs' Entrance Fees to CC-DG,
                  and CC-DG planned to disavow any obligation to re-pay the
5                 upstreamed funds to Plaintiffs and Class;

6                 b. CC-PA did not have and did not intend to maintain reserves in trust
                  to cover its Entrance Fee refund obligations as required by California
7                 Health & Safety Code § 1792.6; and,

8                 c. Defendants intended to keep CC-PA dangerously underfunded,
                  running a very large deficit and dependent on voluntary infusions of
9                 funds from CC-DG.

10  TAC ¶ 131. Plaintiffs also adequately allege that the omitted information should have been

11  disclosed in marketing materials and continuing care contracts. *Id*. ¶¶ 62, 66. Plaintiffs, however,

12  fail to allege with particularity who concealed the "facts" above. "Rule 9(b) 'does not allow a

13  complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate

14  their allegations when suing more than one defendant . . . and inform each defendant separately of

15  the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476

16  F.3d 756, 764-65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp.

17  1437, 1439 (M.D. Fla. 1998). Here, Plaintiffs make no effort to differentiate their allegations

18  against CC-PA, CC-DG and CRMLP. Instead all three of the Defendants are referred to

19  collectively as "Defendants." *See* TAC ¶¶ 130-34. As such, the concealment claim is subject to

20  dismissal for failure to comply with Rule 9(b).

21                         **2. Actual Reliance**

22         More substantively, Plaintiffs fail to allege how they would have behaved differently had

23  the purportedly omitted information been disclosed to them. Plaintiffs do not state they would

24  have rejected the Residency Contract or declined to reside at the Vi if the allegedly omitted

25  information had been disclosed. Rather, Plaintiffs allege in only conclusory language that they

26  "reasonably relied on Defendants actions." *Id*. ¶ 132. This is insufficient for a concealment claim.

27  Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                    17

United States District Court
Northern District of California

1    *In re Tracht Gut, LLC*, 836 F.3d at 1150-51 (the court does not have to accept as true conclusory

2    allegations in a complaint or legal claims asserted in the form of factual allegations).

3         The concealment claim is dismissed.

4         **D.    Third Cause of Action for Negligent Misrepresentation**

5         Plaintiffs' third cause of action is for negligent misrepresentation. To state a claim for

6    negligent misrepresentation, a plaintiff must plead: (1) the defendant misrepresented a past or

7    existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to

8    induce the plaintiff's reliance on the misrepresented fact; (4) the plaintiff's actual reliance on the

9    misrepresentation; and (5) resulting damage. *Apollo Capital Fund LLC v. Roth Capital Partners*,

10   LLC, 158 Cal. App. 4th 226, 243 (Cal. App. 2007).

11        Although the third cause of action claim is asserted against all Defendants, Plaintiffs do not

12   identify a single statement made by CC-DG or CRMLP. *See* TAC ¶¶ 136-42 (alleging only that

13   "CC-PA negligently misrepresented important facts" and referring to Defendant in the singular,

14   not plural throughout). The third cause of action is accordingly dismissed as to CC-DG and

15   CRMLP for failure to plead fraud with particularity.

16        The remaining Defendant, CC-PA, argues that the claims must be dismissed because the

17   alleged misrepresentations amount to non-actionable "puffery" and Plaintiffs fail to plead reliance.

18        **1. Alleged Misrepresentations**

19        Puffery has been described as "outrageous statements, not making specific claims, that are

20   so exaggerated as to preclude reliance by consumers." *Cook, Perkiss and Liehe, Inc. v. N.*

21   *California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (quoting *Metro Mobile CTS,*

22   *Inc. v. Newvector Commc'ns, Inc.*, 643 F. Supp. 1289, 1292 (D. Ariz. 1986) *rev'd without opinion*,

23   803 F.2d 724 (9th Cir. 1986)). Puffery has also been described as claims that are either vague or

24   highly subjective. *Id*. (citing *Stearling Drug, Inc. v. FTC*, 741 F.2d 1146, 1150 (9th Cir. 1984),

25   *cert. denied*, 470 U.S. 1084 (1985)).

26        Here, Plaintiffs identify two alleged misrepresentations made by CC-PA. TAC ¶¶ 137-38.

27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                                              18

*United States District Court*
*Northern District of California*

First, Plaintiffs allege that in a letter dated October 9, 2008, CC-PA represented the following facts were true:

> [Residents experience] a sense of security, knowing they have made a good choice. They know their entrance fee refund will not fluctuate with changes in the market . . . Our residents enjoy a vibrant and enriching lifestyle with the knowledge that they have planned wisely to secure their future.

*Id*. ¶ 137 (quoting Ex. 22, Letter dated October 9, 2008 from Classic Residence by Hyatt to Residents). This Letter consists entirely of puffery. Whether residents experience a sense of security or enjoy a vibrant and enriching lifestyle are purely subjective. Whether residents know they made a "good choice" or "planned wisely" are similarly subjective. The representation that the entrance fee refund "will not fluctuate with changes in the market" is less subjective; nevertheless, it is too vague to be actionable and Plaintiffs do not plausibly allege that the statement is false or misleading.

Second, CC-PA allegedly misrepresented that their Entrance Fees would be used to provide services. *Id*. ¶ 138. Defendants do not contend that this statement is puffery. Instead, they argue that the alleged misstatement lacks a factual basis and contradicts the express terms of the Residency Contracts. The Court agrees. The circumstances of the alleged fraud are not pled with particularity as required by Rule 9(b) and further, the alleged misstatement contradicts the terms of the Residency Contracts. *See* TAC, Exs. 8, 10, 12 and 14.

### 2. Actual Reliance

Plaintiffs' conclusory allegation that they "reasonably relied" on the alleged misstatements lacks any factual basis. Plaintiffs do not explain how they would have acted differently but for the misrepresentation. Furthermore, as Defendants point out, three of the four Plaintiffs entered the Vi *before* the October Letter was published in 2008. *See* TAC ¶¶ 38, 41, 44,48. Plaintiffs contend that the same language was used prior to 2008, but even if true, Plaintiffs do not plead facts suggesting actual reliance.

The negligent misrepresentation claim is dismissed because it is based on nonactionable

United States District Court
Northern District of California

puffery, is not pled with particularity, and the allegation of actual reliance lacks factual support.

### E.    Fourth Cause of Action for Breach of Fiduciary Duty

In the fourth cause of action, Plaintiffs allege that Defendants breached their fiduciary duty. More specifically, Plaintiffs allege that Defendants acted against Plaintiffs' interest in connection with their Entrance Fee loan transactions and the Promissory Notes providing for refunds of the Entrance Fee.

Before a person can be charged with a fiduciary obligation, that person must (1) knowingly undertake to act on behalf and for the benefit of another; or (2) enter into a relationship which imposes that undertaking as a matter of law. *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 386 (2008). Defendants contend that Plaintiffs fail to state a cognizable claim under either theory.

### 1. Alleged Relationship

As to CC-DG and CRMLP, Plaintiffs' allegations are entirely conclusory. Plaintiffs fail to allege any facts whatsoever to show they had a fiduciary relationship with CC-DG and CRMLP. *See* TAC ¶¶ 93-98, 144-55. As such, Plaintiffs' conclusory allegations need not be accepted as true. *In re Tracht Gut, LLC*, 836 F.3d at 1150-51. The breach of fiduciary duty claim is dismissed as to CC-DR and CRMLP.

Plaintiffs' relationship with the remaining Defendant, CC-PA, is rooted in contracts, namely the Residency Contracts and Promissory Notes. Neither of these agreements expressly imposes fiduciary duties concerning Entrance Fees, and Plaintiffs do not allege otherwise. Instead, Plaintiffs allege that Defendants owed a fiduciary duty "by virtue of the nature of their relationship whereby Plaintiffs . . . reposed confidence in the integrity of Defendants, which was voluntarily accepted and/or assumed by Defendants, and by virtue of the power Defendants retained over Plaintiffs and over their homes and residential environment." TAC ¶ 144. Again, Plaintiffs' allegations lack any factual basis and therefore, the Court need not accept it as true. *In re Tracht Gut, LLC*, 836 F.3d at 1150-51.

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

Moreover, even if Plaintiffs' allegations were true, reposing confidence in Defendants is, without more, insufficient to establish a fiduciary relationship. Contractual relationships require a degree of trust and confidence between the contracting parties. *City of Hope*, 43 Cal.4th at 389. Imposing a fiduciary duty any time a relationship of trust and confidence exists "would result in the imposition of a fiduciary duty in nearly every contractual setting. Clearly, the law does not extend this far." *In re Rexploure, Inc. Sec. Litig.*, 685 F. Supp. 1132, 1140 (N.D. Cal. 1988); *see also Simplicity Intern'l v. Genlabs Corp.*, 2010 WL 11508819, at *4 (C.D. Cal. April 16, 2010) ("Without more, the simple fact that Plaintiff reposed confidence in Genlabs cannot create a fiduciary duty.").

Plaintiffs argue that courts have found fiduciary relationships exist between contracting parties where the defendant targeted senior citizens, citing *Abbit v. ING USA Annuity & Life Ins. Co.*, 999 F. Supp. 2d 1189, 1199 (S.D. Cal. 2014). In *Abbit*, the plaintiff purchased an annuity from the defendant and alleged that the defendant (1) targeted senior citizens with products that falsely promised security; (2) promised investors "continued commitment, thanking them for ongoing trust and confidence in Defendant as their 'preferred financial services provider'"; and (3) drafted all contractual materials and structured pricing parameters, taking advantage of Defendant's superior knowledge and bargaining power. *Id*. The *Abbit* court held that these allegations were sufficient to plausibly suggest a claim for relief. *Id*. Here, however, Plaintiffs' TAC lacks comparable allegations. As discussed previously, Plaintiffs do not allege sufficient facts to support a plausibly inference that at the time they paid their Entrance Fees, they were targeted with a false promise of security. Nor do Plaintiffs allege that Defendants thanked them for their trust and confidence; and that Defendants took advantage of their superior knowledge and bargaining power. Rather, Plaintiffs allege:

> The average age of these residents is nearly 85, and many of them are over 90, and some even over 100. Over time, as their health deteriorates, Plaintiffs become less and less physically, emotionally, and cognitively able to move out of the Vi at Palo Alto. CC-PA was entrusted with large sums of money that Plaintiffs set aside for their

United States District Court
Northern District of California

1

2

3

4

> retirement. CC-PA asserts the unilateral right to determine the cost of residents' homes and their living environment and denies the residents any right to participate in CC-PA's decisions about these essential matters. The circumstances described herein give rise to a fiduciary duty to the residents on the part of Defendants. CC-PA assumed the role of caregiver and business partner to Plaintiffs and the Class.

5

6

7

TAC ¶ 93. Even accepting these allegations as true, they do not plausibly support an inference that CC-PA and Plaintiffs had a fiduciary relationship at the time Plaintiffs decided to pay their Entrance Fees and executed the related Promissory Notes.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

        The few additional cases cited by Plaintiffs are also distinguishable. Like *Abbit*, these cases concern the sale of annuities to senior citizens and the court found a basis for a fiduciary relationship. In *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1087 (S.D. Cal. 2006), the senior-aged plaintiffs alleged that the defendants "expressly held itself out as an objective expert acting in the insured's best interests," and that plaintiffs had to "depend on the good faith and performance of the insurer" to understand "complex financial instruments which the average person [could] not understand." *Id*. The TAC in the instant case does not include comparable allegations. In *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1108 (C.D. Cal. 2006), *as amended* (Aug. 21, 2006), the court held that plaintiffs stated a cognizable claim for breach of fiduciary duty based on the "extensive allegations that defendants trained their sales agents to lure seniors [sic] citizens into their confidence by offering assistance with estate and financial planning." *Id*. Again, the TAC in the instant case does not include any allegations regarding training sales agents, much less extensive allegations that agents were trained to "lure" seniors into CC-PA's confidence. Instead, the TAC includes a single allegation that CC-PA used marketing materials "to lure" Plaintiffs. TAC ¶ 66. In *Negrete v. Fidelity and Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1003 (C.D. Cal. 2006), the plaintiffs alleged that the defendants assumed fiduciary duties "by virtue of their purported positions as financial advisors, estate planning specialists, and because of their superior knowledge and ability to manipulate and control senior citizens' finances and legal status." *Id*. Once again, the TAC lacks comparable

27

28

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
22

United States District Court
Northern District of California

1   allegations.

2          Plaintiffs also allege that Defendants retained "power" over them, their homes and

3   residential environment. TAC ¶ 144. Plaintiffs do not allege, however, that Defendants had power

4   over them at the time they entered the Residency Contracts. Moreover, Plaintiffs do not allege

5   how the "power" Defendants retained is any different from power inherent in other contractual

6   relationships. In their Opposition to Defendants' motion, Plaintiffs argue that the "caretaking

7   relationship" between Plaintiffs and CC-PA gives rise to a fiduciary duty. Pls.' Opp'n to CC-PA's

8   Mot. at 12. Plaintiffs do not cite to, and this Court is not aware of, any case in which a court found

9   that a contract for housing and care in a CCRC, without more, gives rise to a fiduciary duty. There

10  appears to be no published court opinion in California on this issue, and Defendants have cited to

11  three opinions from other states that have found that a contract for housing and care in a CCRC

12  does not give rise to fiduciary duties. *See Albaugh v. The Reserve,* 930 N.W.2d 676, 685-686

13  (Iowa 2019) (affirming summary judgment in favor of defendant senior adult congregate living

14  facility because defendant and residents (who are sixty years of age or older) had engaged in arms-

15  length transaction, on equal footing, and without defendant having any form of influence over

16  plaintiff); *Buck v. The Reserve*, 947 N.W.2d 225 (Iowa Ct. App. 2020) (reversing judgment on

17  breach of fiduciary duty claim because of *Albaugh*); *Roscoe v. Elim Park Baptist Home, Inc.*, 2015

18  WL 9871344, at *3-6 (Conn. Super. Ct. Dec. 22, 2015) (rejecting claim that a fiduciary

19  relationship existed between decedent and a Continuing Care Retirement Community because

20  there were "no allegations that the defendant had actual or constructive knowledge of the

21  decedent's diminished capacity or incapacity, as is required to demonstrate that the transaction

22  was closer than arm's length or characterized by a unique degree of trust and confidence."").

23  Although the three out-of-state cases are not controlling, the Court finds their reasoning

24  persuasive. In the absence of allegations of unequal footing, undue influence, diminished capacity

25  or incapacity, or other similar allegations, Plaintiffs' contractual relationship with CC-PA does not

26

27  Case No.: 5:14-cv-00750-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                                      23

United States District Court
Northern District of California

support a cognizable breach of fiduciary duty claim.[7]

### 2. Whether Defendants Undertook to Act on Behalf And For Plaintiffs

Plaintiffs' alternative theory, that Defendants voluntarily accepted and/or assumed to act on their behalf, is equally unavailing. It bears repeating that the parties' relationship is rooted in contracts. Plaintiffs contracted for certain services and a right to residency, and CC-PA obtained capital in the form of Entrance Fees and monthly fees. TAC, Ex. 9. Neither the Residency Contract nor Promissory Note expressly or even impliedly suggest Defendants knowingly undertook a fiduciary duty to act on behalf and for the benefit of Plaintiffs. Rather, the Residency Contracts expressly disclaim any non-contractual relationship or rights as to Entrance Fees. TAC, Exh. 8 at section 9.5 ("Your rights under this Contract are limited to those rights expressly granted in it and do not include any proprietary interest in the assets of the Provider or in the Community, any managerial or other interest in the Provider or any third-party contractor, or any interest in any payments made under this Contract.").

California courts have explained that "[t]he essence of a fiduciary . . . relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002) (quoting *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383 (1983)). Here, Plaintiffs fail to plead sufficient facts to show that Defendants held a "superior position to exert unique influence" over them when they entered the relevant contracts. There are also no facts alleged to support an inference that Defendants entered the contracts "with the view of acting primarily for the benefit of" Plaintiffs. *City of Hope*, 43 Cal.4th at 386.

---

[7] In their Opposition brief, Plaintiffs argue that "CC-PA exploited its superior knowledge, bargaining power, and Plaintiffs' vulnerable position." Pls' Opp'n to CC-PA's Mot. at 16. Allegations in a brief, however, cannot rectify insufficiencies in a complaint. *Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020); *Siemers v. Wells Fargo*, 2006 WL 2355411, at *20 (N.D. Cal. Aug. 14, 2006).

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

24

United States District Court
Northern District of California

The breach of fiduciary duty claim is accordingly dismissed. *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, 2011 WL 3703192, at *4 (S.D. Cal. Aug. 23, 2011) (granting motion to dismiss because "nothing in the contract itself suggests [defendant] intended to subordinate its interests to [p]laintiffs'. [citation omitted] Rather, the agreement's terms indicate that the parties intended to establish a mutually beneficial relationship."); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 4774791, at *6 (N.D. Cal. Nov. 16, 2010) (finding that "[plaintiff's] allegations do not support an inference that he entered the loan transaction involuntarily or under some type of duress as a result of a preexisting vulnerability of which [the corporation] took advantage.").

### F. Fifth Cause of Action for Violation CLRA

Plaintiffs' fifth cause of action is for violation of the CLRA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a); *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). This prohibition bars representations that "goods . . . have characteristics which they do not have" or "are of a particular standard, quality, or grade . . . if they are of another." Cal. Civ. Code §§ 1770(a)(5), (7). It likewise bars the omission of any material fact relating to those goods. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). The Ninth Circuit has held that "rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA" when such claims are grounded in fraud. *Vess*, 317 F.3d at 1102-05.

Under Civil Code Section 1780(a), "CLRA actions may be brought by a consumer 'who suffers any damage as a result of the use or employment' of a proscribed method, act, or practice." *MacRae v. HCR Manor Care Servs.*, 2014 WL 3605893, at *3 (C.D. Cal. July 21, 2014) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010)). Therefore, to state a claim under the CLRA, a plaintiff must show that: (1) a consumer is exposed to an unlawful business practice, and (2) the consumer is damaged by the unlawful practice. *Id.* at *3. Additionally, a

CLRA claim based in fraud requires reliance. *Id*.

Defendants seek dismissal of the CLRA claim, asserting that Plaintiffs (1) fail to comply with the venue affidavit requirement; (2) fail to comply with the pre-complaint notice requirement; and (3) fail to allege sufficient facts with particularity to state a cognizable claim. Defendants also argue that three of the four named Plaintiffs' claims are barred by the statute of limitations. The Court addresses each of these arguments below.

### 1. Venue Affidavit Requirement

The CLRA requires a plaintiff to file an affidavit "concurrently with the filing of the complaint." Cal. Civil Code § 1780(d). This affidavit must state facts showing that the action has been commenced in a county described in the statute as a proper place for trial of the action. *Id*. If a plaintiff fails to file the required affidavit, the court "shall, upon its own motion or upon motion of any party dismiss the action without prejudice." *Id*.

Although Plaintiffs did not file an affidavit concurrent with their original complaint, they have done so now in response to the pending motions to dismiss. Plaintiffs filed an affidavit signed by Burton Richter on March 28, 2014. *See* Dkt. No. 286-1. "A court need not dismiss a CLRA claim based on the fact that the venue affidavit was not filed concurrently with the complaint if an affidavit has been filed that satisfies the purpose of the rule—ensuring that the action has been commenced in a proper venue." *Seifi v. Mercedes-Benz USA, LLC*, 2013 WL 2285339, at *8 (N.D. Cal. May 23, 2013). Because Plaintiffs are now in compliance with Civil Code § 1780(d), and Defendants do not contest venue in this Court, the Court finds that any technical violation of § 1780(d) does not warrant dismissal of the CLRA claim.

### 2. Precomplaint Notice and Demand Requirement of Civil Code § 1782(a)

Defendants next contend that the CLRA claim is procedurally defective because Plaintiffs failed to provide the statutorily required 30 days' pre-suit notice of the alleged violation. Cal. Civ. Code § 1782(a). Plaintiffs accuse Defendants of putting form over substance, and further assert that they were not required to send a demand letter because their CLRA claim seeks injunctive

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

relief, not damages, and in any event, they sent a demand letter on March 27, 2014.

The Court agrees with Plaintiffs. Section 1782(d) provides that "[a]n action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a)." Cal. Civ. Code § 1782(d). Plaintiffs' CLRA claim is limited to injunctive relief. *See* TAC ¶ 163 ("Defendants are continuing to engage in the practices alleged herein, and will not cease until an injunction is issued by this Court."). Therefore, the purported failure to comply with § 1782(a) is not a basis for dismissing Plaintiffs' CLRA claim.

### 3. Statute of Limitations

The statute of limitations for CLRA claims is three years from the date of the commission of the alleged violation. Cal. Civ. Code § 1783. Here, the alleged CLRA violation occurred when Defendants marketed and sold the CCRA residential and financial management services. TAC ¶ 161. Three of the four Plaintiffs, Linda Collins Cork, Georgia Lee May and Janice Robb Anderson, moved to the Vi in 2005. TAC ¶¶ 38, 41, 48. This suit was filed in February of 2014, well after three years from the date of the alleged CLRA violation.

The three Plaintiffs counter that their CLRA claim is not time-barred because Defendants' fraudulent concealment tolls the statute of limitations, and alternatively, the discovery rule postpones accrual of their CLRA claim. The TAC includes an allegation suggesting that Plaintiffs did not learn of Defendants' failure to maintain Entrance Fee reserves until March of 2012, when Defendants stated in writing that "there is no entrance fee repayment reserve." TAC ¶ 63, Ex. 7. This allegation might be sufficient to show the time and manner of the discovery of their cause of action; however, Plaintiffs fail to allege facts to show their inability to make the discovery earlier despite reasonable diligence. Therefore, the CLRA claim asserted by the three Plaintiffs must be dismissed as time-barred. *See Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *10 (N.D. Cal. Feb. 21, 2014) (dismissing CLRA claim because plaintiff failed to allege factual basis for tolling the statute of limitations).

//

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1

### 4. Whether Plaintiffs Allege Legally Cognizable Claim

Defendants do not dispute the timeliness of the CLRA claim brought by the remaining Plaintiff, Thomas Merigan. Accordingly, the Court considers below Defendants' challenges to the substance of the CLRA claim and concludes that they have merit.

First, Defendants contend that Plaintiffs fail to identify with particularity any actionable misrepresentation. The Court agrees. Plaintiffs allege only in general and conclusory terms that "Defendants practices in connection with the marketing and sale of CCRC residential and financial management services related to Entrance Fees and allocated expenses violated the CLRA insofar as Defendants (1) misrepresented the "character, uses and benefits of the services they provided"; (2) misrepresented the "standard and quality of the services they provided"; (3) knowingly advertised services with the intent not to sell them as advertised; and (4) "knowingly mispresented the legal rights, obligations and/or remedies associated with their services." TAC ¶ 161. This paragraph merely parrots the language of the CLRA and does not pass muster on a motion to dismiss. *Ashcroft*, 556 U.S. at 678 ("'[A] formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atlantic*, 550 U.S. at 557)). The CLRA claim incorporates by reference all the other allegations in the TAC, but Defendants should not have to scour the TAC for every possible allegation that suggests fraud. In response to the motions to dismiss, Plaintiffs argue that they were "lured into the Vi at Palo Alto by Defendant's assurances of financial security." Pls.' Opp'n to CC-PA's Mot. at 19. This allegation does not appear in the TAC[8], and even if had been included, it would be insufficient, without more, to give Defendants fair notice of the basis of the CLRA claim.

Second, Defendants contend that Plaintiffs fail to allege facts to show reliance. Where claims under the CLRA relate to an alleged misrepresentation, plaintiffs must allege detrimental

---

[8]  "[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014)).

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

reliance, *i.e.*, that they would have made a different consumer decision but for the alleged

misstatements at issue. *See Faigman v. Cingular Wireless, LLC*, 2007 WL 708554, at *5 (N.D.

Cal. Mar. 2, 2007) (explaining that "plaintiffs must allege that they would have acted differently—

i.e., not purchased phones or services from Cingular, or opted for different Cingular products or

services—had plaintiffs known" the undisclosed facts); *see also Cattie v. Wal-Mart Stores, Inc.*,

504 F. Supp. 2d 939, 947 (S.D. Cal. 2007) (requiring plaintiff to allege reliance on false

representations in advertisements in a false advertising case); *Anunziato v. eMachines, Inc.*, 402 F.

Supp. 2d 1133, 1138 (C.D. Cal. 2005) (acknowledging the reliance element of a CLRA claim).

Plaintiffs do not dispute that they are required to allege actual reliance and insist that they

have done so. Plaintiffs' allegations, however, are entirely conclusory. *See* TAC ¶ 132 ("Plaintiffs

. . . reasonably relied on Defendants' actions."), 142 (same). Conclusory allegations need not be

accepted as true. *In re Tracht Gut, LLC*, 836 F.3d at 1150-51.

Accordingly, Plaintiffs fail to state a claim under the CLRA.[9]

### G.     Sixth and Seventh Causes of Action for Violation of Section 17200

The sixth and seventh claims for violations of the UCL are based on allegations that

Defendants committed financial elder abuse in violation of the Welfare and Institutions Code;

failed to maintain a reserve fund in violation of the Health & Safety Code §§ 1792.6 and 1793

("Refundable contracts; refund reserve funds; exemption; unsecured refundable entrance fees;

disclosure'"), 1793.5 ("Acceptance of deposits and proposals to promise to provide care without

authorization, failure to place deposits into escrow accounts, execution of continuing care

contracts without authorization and abandonment of continuing care retirement community

obligations; violations; offense and penalties"); abandoned their obligations under the Residency

Contracts in violation of Health & Safety Code § 1793.5(d); failed to make disclosures required by

---

[9]  Because Plaintiffs fail to allege any misrepresentation with particularity and fail to allege
reliance, the Court finds it unnecessary to discuss Defendant's third challenge to the CLRA claim,
namely whether Plaintiffs allege lost money or property.

United States District Court
Northern District of California

1    Health and Safety Code § 1793(f); 1771.8 ("meetings with residents of continuing care retirement

2    communities; financial statements; resident representative on provider's governing body"); and

3    engaged in deceptive practices. TAC ¶¶ 167-72, 178-83.

4         Business & Professions Code § 17200 defines unfair competition as any "unlawful, unfair

5    or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Unlawful" practices are

6    practices forbidden by law. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163

7    (1999). For purposes of a consumer suits, "unfair" practices are conduct that is "immoral,

8    unethical, oppressive, unscrupulous or substantially injurious to consumers." *McKell v. Wash.*

9    *Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Alternatively, a violation of public policy may

10   provide the predicate for an unfair business practices claim when the public policy is "tethered to

11   specific constitutional, statutory, or regulatory provisions." *Bardin v. Daimlerchrysler Corp.*, 136

12   Cal. App. 4th 1255, 1260-61 (2006). The "fraudulent" prong requires a showing of actual or

13   potential deception to some members of the public, or harm to the public interest.  *See id*. at 180.

14        Defendants asserts four grounds for dismissal of the UCL claims:  (1) failure to plead loss

15   of money or property; (2) failure to allege an unlawful act; (3) failure to allege a fraudulent act;

16   and (4) failure to allege an unfair act.

17                    **1. Economic Injury**

18        With the passage of Proposition 64, private standing for a UCL claim is limited to any

19   person who has lost money or property as a result of unfair competition. *Kwikset Corp. v. Superior*

20   *Court*, 51 Cal.4th 310, 321-22 (2011). "The plain import of this is that a plaintiff now must

21   demonstrate some form of economic injury." *Id*. The California Supreme Court has instructed that

22   "[t]here are innumerable ways in which economic injury from unfair competition may be shown.

23   A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she

24   otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of

25   money or property to which he or she has a cognizable claim; or (4) be required to enter into a

26   transaction, costing money or property, that would otherwise have been unnecessary." *Id*. at 323.

27

28

1   "[T]he Proposition 64 requirement that injury be economic renders standing under section 17204

2   substantially narrower than federal standing under article III, section 2 of the United States

3   Constitution, which may be predicated on a broader range of injuries." *Id.* at 324; *see also Ehret v.*

4   *Uber Technologies*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) ("Whereas a federal plaintiff's

5   injury in fact may be intangible . . . a UCL plaintiff's injury in fact [must] specifically involve lost

6   money or property." (internal quotation marks omitted)).

7           Here, Plaintiffs attempt to meet the economic injury requirement by alleging that "their

8   security interest has been impaired." TAC ¶ 97; *see also id.* ¶¶ 6, 18, 65, 74, 97, 19, 97, 98, 120,

9   122, 152, 167, 178 (demonstrating that their security interest has been impaired). Plaintiffs explain

10  in their Opposition brief that by "impaired," they mean that their present or future property interest

11  in their Entrance Fees has been diminished. Pls.' Opp'n to CC-PA's Mot. at 20. Because this

12  economic injury theory is recognized in *Kwikset*, the Court concludes that Plaintiffs' allegations

13  are sufficient. Although Plaintiffs do not quantify their economic loss in monetary terms, *Kwikset*

14  does not require them to do so at the pleading stage. *Levitt v. Yelp! Inc.*, 2011 WL 13153230, at *7

15  (N.D. Cal. Mar. 22, 2011) (stating that all that is needed to be alleged is "an identifiable trifle" of

16  economic injury).[10]

17                              **2. Unlawful Business Practices**

18          "By proscribing unlawful business practices, the UCL borrows violations of other laws and

19  treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App.

20  4th 824, 837 (2006). Here, Plaintiffs base their UCL on alleged violations of the elder abuse

21  statute and the Health & Safety Code provisions governing refundable residency contracts. TAC

22  ¶¶ 166-85.[11]

23

24  _____

    [10] Whether Plaintiffs will ultimately be able to present sufficient evidence of economic injury to
25  warrant restitution or disgorgement is a separate issue that will undoubtedly be the subject of later
    proceedings.
26
    [11] The alleged CLRA violation is not pleaded as a basis for the UCL claim. *Id.*
27  Case No.: 5:14-cv-00750-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
28

### a.     Elder Abuse Statute

As discussed previously, the claim for financial elder abuse is adequately pled. It follows that the UCL claims under the unlawful prong may proceed based on the alleged financial elder abuse violation.

### b.     Health & Safety Code § 1771.8

CC-PA also challenges the unlawful business practices claim to the extent it is based on a Health & Safety Code § 1771.8, which requires in pertinent part that CCRC providers "hold, at a minimum, semiannual meetings with the residents of the . . . community, or the resident association or its governing body, for the purpose of the free discussion of subjects . . . and issues as they apply to the continuing care retirement community and proposed changes in policies, programs, and services." Health & Safety Code § 1771.8(c). Plaintiffs allege that CC-PA and CC-DG violated § 1771.8(c) insofar as they "never permitted a representative of the residents to participate in CC-DG's or CC-PA's Board Meetings." TAC ¶ 91. However, § 1771.8(c) does not require resident to participate in board meetings; it requires a CCRC provider to hold residential meetings. Plaintiffs' TAC does not allege that CC-PA failed to hold residential meetings. *See* TAC, ¶¶ 85, 90. Therefore, the purported violation of section 1771.8 does not support Plaintiffs' unlawful business practices claims.

### c.     CC-DG and CRMLP's Allegedly Unlawful Business Practices

CC-DG and CRMLP separately argue that the alleged violations of the Health & Safety Code do not provide a basis for a UCL claim directly against them. Their argument is persuasive. The Health & Safety Code provisions Plaintiffs rely upon apply to a "provider offering a refundable contract." Health Safety Code § 1792. A "provider" means an entity that provides continuing care, makes a continuing care promise, or proposes to promise to provide continuing care," and includes "any entity that controls an entity that provides continuing care, makes a continuing care promise, or proposes to promise to provide continuing care." *Id*. § 1771(p)(10).

The TAC alleges that CC-PA is a provider, whereas there is no mention of CC-DG and

United States District Court
Northern District of California

1  CRMLP acting as providers. *See* TAC ¶¶ 62 ("California law requires that CC-PA retain sufficient

2  reserves to cover its refund obligations."), 63 ("CC-PA's failure to maintain sufficient reserves in

3  trust to refund the Entrance Fees, and non-disclosure of this fact, is a direct and ongoing violation

4  of Health & Safety Code §§ 1972.6 and 1973."). Plaintiffs rely on allegations that "CC-DG

5  controls CRMLP and CRMLP 'oversees the transfer of funds between CC-PA and CC-DG.'" Pls.'

6  Opp'n to CRMLP and CC-DG's Mot. at 21, Dkt. No. 285 (citing TAC ¶¶ 28-29). However,

7  Plaintiffs do not allege that CC-DG controls CC-PA's continuing care operations and services.

8  That CRMLP "oversees" the transfer of funds from CC-PA to CC-DG is insufficient, without

9  more, to establish that CRMLP and CC-DG control CC-PA such that CRMLP and CC-DG should

10  be held directly liable as providers of continuing care.

11      The unlawful business practices claims against CC-DG and CRMLP are dismissed.

12                          **3. Allegedly Unfair Business Practices**

13      CC-PA contends that (1) Plaintiffs cannot maintain an action under the unfair prong as to

14  any law that CC-PA did not violate; (2) an unfair prong claim cannot stand when the challenged

15  practice is accepted by the relevant regulatory agency as appropriate; and (3) the TAC lacks the

16  specific, factual allegations required to substantiate Plaintiffs' claims or its purported unfair

17  business practices.

18      The Court rejects CC-PA's first and third arguments because the alleged violations of the

19  financial elder abuse statute and the Health and Safety Code (other than section 1771.8) provide a

20  sufficient basis for a UCL claim under the unfair prong. CC-PA's second argument has some

21  merit. A trier of fact may ultimately conclude that CC-PA's conduct was not immoral, unethical,

22  oppressive, unscrupulous or substantially injurious because the DSS concluded that CC-PA's

23  contracts are not "refundable contracts." However, the Ninth Circuit explained that "[a] contract

24  that would otherwise be classified as repayable will be classified as refundable if the applicant or

25  provider refers to the repayment as a refund." *Cork v. CC-PA*, 818 Fed. Appx. at 598 n.4 (citing

26  Health & Safety Code § 1771(r)(3)). Plaintiffs allege that CC-PA regularly used the term

27  Case No.: 5:14-cv-00750-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                              33

1  "refundable" and "refund" to explain to residents that they would be repaid most of their Entrance

2  Fees. TAC ¶ 7; *see also* ¶ 59. A CC-PA employee allegedly told a Plaintiff that the Entrance Fee

3  payment "would remain locally with CC-PA, and would not be transferred between entities or

4  otherwise." *Id*. ¶ 64. Plaintiffs' allegations supply a plausible basis for classifying the Residency

5  Contracts as refundable under section 1771(r)(3), even if the DSS concluded that they were not.

6        Plaintiffs have sufficiently alleged UCL claims under the unfair prong.

7            **4. Fraud Prong**

8        A plaintiff may base a UCL claim on an alleged omission, "[but] to be actionable the

9  omission must be contrary to a representation actually made by the defendant, or an omission of a

10  fact that the defendant was obliged to disclose." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d

11  1075, 1085 (N.D. Cal. 2017) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824,

12  835 (2006)).

13        Here, the UCL fraud-based claim is based on the same three omissions that form the basis

14  for the concealment claim. *Compare* TAC ¶ 131 with TAC ¶ 172. As discussed previously,

15  Plaintiffs fail to allege fraud with particularity. It follows that the UCL claim is also subject to

16  dismissal to the extent it is predicated on fraud.

17      **H.**    **Eighth Cause of Action for Breach of Contract**

18        Plaintiffs allege that CC-PA breached its contractual obligations by upstreaming funds to

19  CC-DG and failing to maintain financial reserves in trust as required by Health & Safety Code §

20  1792.6. TAC ¶ 190. The Residency Contracts do not contain any express provisions requiring CC-

21  PA to refrain from "upstreaming" funds to CC-DG and to maintain financial reserves in trust.

22  Plaintiffs do not contend otherwise. Instead, Plaintiffs allege that Health & Safety Code § 1792.6

23  "is incorporated into the contract by operation of law." TAC ¶ 190. The Court previous rejected

24  this argument because Plaintiffs cited no authority in support of such a proposition. Order at 24.

25  Plaintiffs still have not done so.

26        Moreover, reading additional terms into the Residency Contracts would violate the

27  Case No.: 5:14-cv-00750-EJD

    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28

United States District Court
Northern District of California

integration clause stated therein. *See id.*, Ex. 8 at section 10.10 ("[t]his Contract, including all attached Appendices and documents incorporated by reference, constitutes the entire Contract between [each Plaintiff] and [CC-PA]….") and 9.5 ("[each Plaintiff's] rights under this Contract are limited to those rights expressly granted in it and do not include … any interest in any payments made under this Contract."). The Health & Safety Code also forecloses Plaintiffs' incorporation theory. Specifically, section 1787(d) provides that "[a] continuing care contract approved by the department shall constitute the full and complete agreement between the parties." Cal. Health & Safety Code § 1787(d). The contracts at issue in this case were indisputably approved by the DSS. TAC, Ex. 8, p. 35 ("This continuing care contract form has been approved by the [DDS] . . . .").

Because Plaintiffs fail to allege that CC-PA breached any provision of the Residency Contracts, the breach of contract claim is dismissed.

### I.      Ninth Cause of Action for Breach of Implied Covenant

The ninth cause of action is based on allegations that CC-PA (a) denied that the Residency Contracts are "refundable contracts"; (b) failed to maintain prudent cash reserves; (c) failed to maintain statutorily required reserves in trust; (d) upstreamed hundreds of million dollars of Entrance Fees to CC-DG; and (e) failing to use Entrance Fees for the benefit of CC-PA and its residents. TAC ¶ 196.

Defendants contend that this claim should be dismissed for three reasons:  an implied covenant of good faith and fair dealing is not a vehicle for adding additional contractual terms; the TAC fails to allege that CC-PA's treatment of Entrance Fees is inconsistent with the purpose of the Residency Contracts; and Plaintiffs have not alleged facts sufficient to establish that CC-PA acted in bad faith in connection with its treatment of Entrance Fees.

As to CC-PA's first argument, the law is well established that"[t]he implied covenant will not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms." *Young v. Facebook, Inc.*, 790 F. Supp. 2d

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
35

1   1110, 1117 (N.D. Cal. 2011) (citation omitted); *see also, e.g.*, *Racine & Laramie, Ltd. v. Cal.*

2   *Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) ("[T]he implied covenant is

3   limited to ensuring compliance with the *express terms of the contract*, and cannot be extended to

4   create obligations not contemplated in the contract.") (Emphasis added)). The Residence Contracts

5   do not include express provisions forbidding CC-PA from transferring Entrance Fees to CC-DG or

6   requiring CC-PA to establish and maintain reserves in trust. Therefore, Plaintiffs' breach of

7   implied covenant fails on this basis alone.

8       The breach of implied covenant claims is dismissed.

9       **J.   Tenth Cause of Action for Declaratory Relief**

10      Plaintiffs also request "a declaration of the rights and responsibilities of the parties with

11  respect to compliance with California law." TAC ¶ 200. Specifically, Plaintiffs seek declaratory

12  relief in a form of a judicial declaration that (1) the Residency Contracts qualify as "refundable

13  contracts" under Health & Safety Code §1771(r)(2); CC-PA breached its obligations to maintain

14  sufficient reserves in trust pursuant to Health & Safety Code §1792.6; and CC-PA breached its

15  obligations under § 1793(f) to disclose the lack of proper reserves in all marketing materials and

16  continuing care contracts. TAC ¶ 199.

17      CC-PA seek dismissal of the declaratory relief claim, asserting that there is no actual

18  controversy, the claim is duplicative of other claims, and that the DSS is the agency best equipped

19  to address the issues raised in this claim. The Court disagrees. Even though DSS concluded that

20  the Residency Contracts not "refundable contracts," an actual controversy still exists because, as

21  discussed above, "[a] contract that would otherwise be classified as repayable will be classified as

22  refundable if the applicant or provider refers to the repayment as a refund." *Cork v. CC-PA*, 818

23  Fed. Appx. at 598 n.4 (citing Health & Safety Code § 1771(r)(3)). Plaintiffs are entitled to seek a

24  declaration regarding the applicability of section 1771(r)(3) and its impact on the parties' rights

25  and responsibilities. The declaratory relief claim is not duplicative of any other claim insofar as it

26  is based on section 1771(r)(3).

27  Case No.: 5:14-cv-00750-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                          36

United States District Court
Northern District of California

1    CC-DG and CRMLP argue separately that there is no judicial controversy as to them.

2    Plaintiffs allege however, that CC-DG and CRMLP committed the very actions Plaintiffs seek to

3    enjoin through the declaratory relief claim, namely the transfer of Entrance Fees from CC-PA to

4    CC-DG. If Plaintiffs ultimately prove facts to show the applicability of section 1771(r)(3), only an

5    order of declaratory relief against all three Defendants will prevent further transfers of Entrance

6    Fees to CC-DG.

7         Accordingly, Defendants' motions to dismiss the claim for declaratory judgment are

8    denied.

9    **K.    Conspiracy**

10        The TAC includes an allegation that Defendants entered into a conspiracy in furtherance of

11   the acts alleged in therein. TAC ¶ 30. CC-DG and CRMLP argue that this theory of liability is

12   insufficiently pled.

13        "The elements of a civil conspiracy are (1) the formation and operation of a conspiracy, (2)

14   wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful

15   conduct." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329 (N.D. Cal. Aug.

16   9, 2007) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal.4th 503, 511 (1994)). The

17   elements of the underlying tort must also be alleged. *Id*. Further, a plaintiff "must allege that each

18   individual defendant joined the conspiracy and played some role in it because, at the heart of an

19   antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re*

20   *TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (quoting *In*

21   *re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311–12 (D.N.J. 2004)).

22        To the extent the financial elder abuse and UCL claims remain viable, the Court concludes

23   that the conspiracy allegations are sufficient to potentially extend liability to CC-DG and CRMLP.

24   Plaintiffs allege that that CC-DG "developed" and "operated CC-PA under a business plan to use

25   CC-PA as a device to return all of CC-DG's invested capital in CC-PA and to funnel the proceeds

26   of Entrance Fees to CC-DG on a non-recourse basis, for CC-DG's and its shareholders' benefit."

27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

28                                           37

*Id*. ¶ 9. Plaintiffs allege that CRMLP assisted in implementing this business plan; was responsible for the financial management of the community; prepared budgets and financial reports; and oversaw transfer of funds between CC-PA and CC-DG. *Id*. ¶¶ 9, 29. Plaintiffs allege that as a result of this upstreaming, CC-PA is in a financially precarious position, and can pay its debts only by securing periodic, voluntary cash infusions from CC-DG. *Id*. ¶ 121.

Plaintiffs allege that CC-DG and CC-PA conspired to conceal their business plan from prospective residents. *Id*. ¶ 82. Plaintiffs also allege that: "Defendants entered into a conspiracy in furtherance of the wrongful acts alleged in this Complaint. Each Defendant was aware that the other Defendants planned to commit these wrongful acts. Each Defendant agreed with the other Defendants and intended that these acts be committed." *Id*. ¶ 30.

Plaintiffs' allegations, when construed in the light most favorable to Plaintiffs, support a plausible inference that Defendants agreed to "take[], secrete[], appropriate[], obtain[], or retain[] real or personal property of an elder . . . for a wrongful use" in violation of the financial elder abuse statute. Cal. Welf. & Inst. Code § 15610.30(a)(1) and to violate the Health & Safety Code. The allegations of CC-DG's knowledge and agreement are thin. However, CC-DG's alleged control over CRMLP, control over the upstreaming, acceptance of the Entrance Fees and disclaimer of any obligation to repay them support a plausible inference that CC-DG was aware of and agreed to the alleged wrongful acts.

### L. Aiding and Abetting

Plaintiffs also seek to hold each Defendant liable for aiding and abetting the other Defendants in the acts alleged in the TAC. CC-DG and CRMLP contends that Plaintiffs have not pleaded a basis for aiding and abetting.

Liability may be imposed for aiding and abetting a tort when the person "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third

United States District Court
Northern District of California

person." *Das*, 186 Cal. App. 4th at 744-45; *see also York v. Bank of America*, 2016 WL 392928, at *4 (N.D. Cal. Feb. 2, 2016) (applying this standard to a claim for aiding and abetting financial elder abuse). "This standard requires that the defendant have *actual knowledge* of the *specific primary wrong* the defendant substantially assisted." *Simi Mgmt. Corp. v. Bank of America Corp.*, 2012 WL 259865 (N.D. Cal. Jan. 27, 2012) (emphasis in original).

Viewing the allegations in the light most favorable to Plaintiffs, the Court concludes that the TAC alleges sufficient facts to plausibly support a claim for aiding and abetting financial elder abuse for the same reasons stated above in the discussion of the financial elder abuse claim and conspiracy liability.

### M.   Alter Ego Doctrine

Lastly, Plaintiffs' TAC includes alter ego allegations and again, Defendants contend that the allegations are insufficient as a matter of law.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). Under California law, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Id.* (citing *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405 (1971)). "Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Id.* (citing *Robbins v. Blecher*, 52 Cal. App. 4th 886 (1997)).

"To invoke the alter ego doctrine, [a plaintiff] must allege: (1) that there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) that if the acts are treated as those of only one of the corporations, an inequitable result will

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1   follow." *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011) (citing *Wady*

2   *v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002)

3   and *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th at 538 (2000). "Among the factors

4   to be considered in applying the doctrine are commingling of funds and other assets of the two

5   entities, the holding out by one entity that it is liable for the debts of the other, identical equitable

6   ownership in the two entities, use of the same offices and employees, and use of one as a mere

7   shell or conduit for the affairs of the other." *Roman Catholic Archbishop v. Superior Court*, 15

8   Cal. App. 3d at 411. "Conclusory allegations of alter ego status are insufficient." *Walsh*, 798 F.

9   Supp. 2d at 1082 (citing *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal.

10  1983)). "The alter ego doctrine may apply between a parent and a subsidiary or, 'under the single

11  enterprise rule, ... between sister or affiliated companies.'" *Wehlage v. EmpRes Healthcare, Inc.*,

12  791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) (quoting *Troyk v. Farmers Group, Inc.*, 171 Cal. App.

13  4th 1305, 1341 (2009)).

14          Here, Plaintiffs' alter ego allegations consist of two sentences: "CC-PA acted as the alter

15  ego of CC-DG. CC-PA was so utterly controlled by CC-DG, directly and through CRMLP, that it

16  effectively ceased to exist as a separate entity." TAC ¶ 32. These are the type of conclusory

17  allegations that will not suffice. Plaintiffs have not made any attempt to plead the elements of alter

18  ego liability, much less facts supporting each element.

19  **IV.     CONCLUSION**

20          For the reasons discussed above, Defendants' motions to dismiss are GRANTED IN PART

21  AND DENIED IN PART as follows:

22          1.      Defendants' motions are DENIED as to the first claim for financial elder abuse and

23  the tenth claim for declaratory relief.

24          2.      Defendants' motions to dismiss are GRANTED as to the second claim for

25  concealment, third claim for negligent misrepresentation, fourth claim for breach of fiduciary

26  duties, the fifth claim for violation of the CLRA, eighth claim for breach of contract and ninth

27  Case No.: 5:14-cv-00750-EJD

28

*United States District Court*
*Northern District of California*

1  claim for breach of the implied covenant.

2       3.       To the extent the sixth and seventh claims are based on fraudulent business

3  practices under the UCL, the claims are DISMISSED as to all Defendants. To the extent these

4  claims are based on violations of the Health & Safety Code, they are DISMISSED as to CC-DG

5  and CRMLP, but not as to CC-PA. To the extent these claims are based on a violation of the

6  financial elder abuse statute, Defendants' motions to dismiss are DENIED.

7       4.       Defendants' motions to dismiss the tenth claim for declaratory relief is DENIED.

8       5.       The alter ego allegations are ordered stricken without leave to amend; the aiding

9  and abetting and conspiracy liability theories are sufficiently pled.

10      6.       All of the dismissed claims are dismissed without leave to amend. Plaintiffs have

11  been on notice since March 2016 of the pleading deficiencies raised in Defendants' instant

12  motions. *See* Order. Despite the benefit of discovery and approximately five years to shore up

13  their allegations while the case was on appeal, Plaintiffs added very few, if any, substantive

14  allegations to the TAC to cure those deficiencies. Given this history, the Court declines to grant

15  leave to amend because further amendments are likely to be futile. *Fidelity Fin. Corp. v. Fed.*

16  *Home Loan Bank of San Francisco*, 792 F.2d 1432, (9th Cir. 1986) (affirming district court's

17  denial of leave to amend).

18       **IT IS SO ORDERED.**

19  Dated:  April 21, 2021

20  _____

21  EDWARD J. DAVILA
    United States District Judge

22

23

24

25

26

United States District Court
Northern District of California