UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LINDA COLLINS CORK, et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>CC-PALO ALTO, INC., et al.,<br><br>            Defendants. | Case No.  5:14-cv-00750-EJD<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 306 |

Plaintiffs Linda Collins Cork, Georgia L. May, Thomas Merigan, and Janice R. Anderson (collectively, "Plaintiffs") bring this suit individually, and on behalf of a proposed class, against CC-Palo Alto, Inc. ("CC-PA"), CC-Development Group, Inc. ("CC-DG"), and Classic Residence Management Limited Partnership ("CRMLP"), collectively referred to as "Defendants."  Pending before the Court is Plaintiffs' motion for class certification ("Mot.") pursuant to Federal Rules of Civil Procedure 23(a)(2), 23(b)(2) and 23(b)(3).  Dkt. No. 306.  Defendants filed an opposition (Dkt. No. 312), and Plaintiffs filed a reply (Dkt. No. 313).  The motion was heard on July 29, 2021.  For the reasons stated below, Plaintiffs' motion for class certification is GRANTED.

## I.     BACKGROUND[1]

Plaintiffs are residents of a Continuing Care Retirement Community ("CCRC") known as the Vi at Palo Alto (hereinafter "the Vi").  To live at the Vi, residents enter into a nonnegotiable

---

[1] The Background is a brief summary of the allegations in the Third Amended Complaint.

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    continuing care contract with CC-PA referred to as a "Refundable Residency Contract"

2    (hereinafter "Residency Contract").  Pursuant to the Residency Contract, residents agree to "loan"

3    CC-PA money in the form of an "Entrance Fee," the terms of which are stated in a nonnegotiable

4    "Entrance Fee Note."  The Entrance Fees made to CC-PA can range from several hundred

5    thousand to several million dollars.

6         CC-PA requires a percentage of the loan to be "forfeited" to CC-PA over the first 10

7    months of the resident's occupancy.  The remainder of the loan is repayable or refundable to

8    residents.  The Vi regularly used the term "refundable" and "refund" when explaining to

9    prospective residents and residents that they would be repaid most of their Entrance Fees, and

10   portrayed the Entrance Fees as secure.  In addition to the one-time Entrance Fee, each resident is

11   required to pay monthly fees.

12        A Residency Contract terminates upon the resident's decision to leave the Vi Community

13   or at death.  CC-PA unconditionally agreed that upon termination of the Residency Contract, it

14   will repay the Entrance Fee at the earlier of (a) fourteen days after resale of the resident's unit or

15   (b) ten years after termination.

16        Plaintiffs allege that the Residency Contract and Entrance Fee Note together constitute a

17   "refundable contract" within the meaning of California law governing CCRCs (the "CCRC Law"),

18   specifically Health and Safety Code Section 1771(r)(2), and therefore CC-PA, a statutorily defined

19   "provider," was required to maintain a refund reserve pursuant to Sections 1792.6(a) and 1793(a).[2]

20   Section 1771(r)(2) provides as follows:

21            [A] continuing care contract that includes a promise, expressed or
              implied, by the provider to pay an entrance fee refund or to repurchase
22            the transferor's unit, membership, stock, or other interest in the
              continuing care retirement community when the promise to refund
23            some or all of the initial entrance fee extends beyond the resident's
              sixth year of residency. Providers that enter into refundable contracts
24            shall be subject to the refund reserve requirements of Section 1792.6.
              A continuing care contract that includes a promise to repay all or a
25

26   _____

     [2] All statutory references are to California law.
27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING MOTION FOR CLASS CERTIFICATION
28                                              2

United States District Court
Northern District of California

1

2

3

> portion of an entrance fee that is conditioned upon reoccupancy or resale of the unit previously occupied by the resident shall not be considered a refundable contract for purposes of the refund reserve requirements of Section 1792.6, provided that this conditional promise of repayment is not referred to by the applicant or provider as a "refund."

4  Cal. Health & Safety Code § 1771(r)(2).

5      Defendants acknowledged a reserve requirement in their marketing materials.

6  Nevertheless, CC-PA failed to maintain reserves and instead, transferred funds to CC-DG without

7  ever informing Plaintiffs of its intention to do so. CC-PA never disclosed to Plaintiffs that it did

8  not maintain reserves in trust, and this failure to disclose allegedly constitutes a violation of Health

9  & Safety Code § 1793(f). As a result of the upstreaming, CC-PA is financially incapable of

10  honoring all debts to Plaintiffs. CC-DG denies any responsibility to repay Entrance Fees or return

11  upstreamed money to CC-PA.

12      Plaintiffs seek certification of four claims for relief: (1) financial abuse of elders under

13  Welfare & Institutions Code § 15610.30; (2) unlawful and unfair business practices in violation of

14  Business and Professions Code § 17200; (3) declaratory relief with respect to compliance with

15  Health and Safety Code §§ 1771(r)(2), 1792.6 and 1793(f); and (4) fraudulent transfer of assets in

16  violation of the Uniform Fraudulent Transfer Act as codified by Delaware Code, Title 6, § 1304(a)

17  and Civil Code § 3439.04.[3] Mot. at 7-8. Plaintiffs seek to represent the following class of

18  similarly situated individuals:

19

20

21

> All current and former residents of the Vi at Palo Alto who entered into a residency contract which states that some portion of the entrance fee is repayable at the earlier of resale of the unit or ten (10) years after termination of the contract; and where the repayable portion of the entrance fee has not yet been repaid.

22  Mot. at 9.

23  **II.    LEGAL STANDARDS**

24      Under Federal Rule of Civil Procedure 23(a), a court may certify a class only where "(1)

25

26  [3] Plaintiffs also allege that Defendants entered into a conspiracy in furtherance of the acts alleged and that each Defendant aided and abetted the other Defendants.

27  Case No.: 5:14-cv-00750-EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

28                                                     3

the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012); *Young v. Cree Inc.*, 2021 WL 292549, at *4 (N.D. Cal. Jan. 28, 2021).

Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Here, Plaintiffs seek certification under Rule 23(b)(2) and Rule 23(b)(3).  Rule 23(b)(2) provides for the maintenance of a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.' " *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 456–66 (2013) (quoting *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 351 (2011)); *see also Mazza*, 666 F.3d at 588.  The Court considers the merits to the extent they overlap with the Rule 23 requirements.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (2011).  The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and

Case No.: 5:14-cv-00750-EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION
4

1    practice that could affect the class *as a whole*." *Id*. at 983 (emphasis in original).  "A party

2    seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Dukes*,

3    564 U.S. at 350.  Ultimately, a trial court has broad discretion in making the decision to grant or

4    deny a motion for class certification.  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th

5    Cir. 2010).

6    **III.     DISCUSSION**

7        **A.     Rule 23(a) Requirements**

8        The Rule 23(a) requirements of numerosity, typicality, and adequacy are readily satisfied

9    in this case, and Defendants do not contend otherwise.  Plaintiffs estimate that there are

10   approximately 270 individual class members, which is more than enough to establish numerosity.

11   *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016) ("[A]s a general

12   matter, a class greater than forty often satisfies the requirement, while one less than twenty-one

13   does not.").

14       "The test of typicality is whether other members have the same or similar injury, whether

15   the action is based on conduct which is not unique to the named plaintiffs, and whether other class

16   members have been injured by the same course of conduct."  *Smith v. Keurig Green Mountain,*

17   *Inc.*, 2020 WL 5630051, at *2 (N.D. Cal. Sept. 21, 2020) (quoting *Hanon v. Dataproducts Corp.*,

18   976 F.2d 497, 508 (9th Cir. 1992)).  Here, the claims arise from the same course of events.  The

19   crux of the suit is CC-PA's alleged failure to maintain reserves in violation of Health & Safety

20   Code § 1792.6.  Plaintiffs and class members allegedly were uniformly harmed by the failure to

21   maintain reserves because they were put "in the distressing position of choosing between vacating

22   the Vi and potentially risking non-repayment, or continuing to live at the Vi in a state of perceived

23   financial insecurity."  *See Cork v. CC-Palo Alto, Inc*, 818 F. App'x 595, 597 (9th Cir. 2020).

24   Thus, the typicality requirement is satisfied.  *Id*. (typicality is satisfied when each class member's

25   claim arises from the same events, and each class member makes similar legal arguments to prove

26   the defendant's liability).

27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING MOTION FOR CLASS CERTIFICATION

28       5

United States District Court
Northern District of California

1       The adequacy of representation requirement means that the class representatives must

2  "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequate

3  representation is usually presumed in the absence of contrary evidence."  *Californians for*

4  *Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).  Here,

5  Defendants have not presented any evidence to rebut the presumption.  Accordingly, the Court

6  finds that the adequacy of representation requirement is satisfied.

7       The only Rule 23 requirement at issue is commonality.  Commonality requires that the

8  "claims must depend on a common contention" that is capable of classwide resolution—which

9  means that its determination will resolve an issue that is "central to the validity of each one of the

10  claims in one stroke."  *Dukes*, 564 U.S. at 350.  Rule 23(a)(2)'s commonality requirement is "less

11  rigorous than the companion requirements" of Rule 23(b)(3).  *Hanlon*, 150 F.3d at 1019.  The

12  Ninth Circuit has further clarified that Rule 23(a)(2) requires only "a single significant question of

13  law or fact."  *Stockwell v. San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).

14       According to Defendants, the claims do not present common questions of law or fact.

15  Opp'n at 10.  Defendants reason that Plaintiffs will have to show that CC-PA made certain

16  representations such that the Residency Contracts were converted to refundable ones, and that this

17  showing would necessitate individualized inquiries into what each class member heard or read,

18  and when.  *Id*. at 5.  More specifically, Defendants argue that commonality is not satisfied

19  because:  (1) Health & Safety Code Section 1771(r)(3) requires individualized proof; (2) Plaintiffs

20  lack evidence that Defendants referred to the Entrance Fee repayment obligation as a "refund";

21  and (3) the class members had prior notice of the transfers between CC-PA and CC-DG.  *Id*. at 10.

22       Defendants' arguments are unpersuasive because they are based on an erroneous

23  premise—that Plaintiffs' suit relies exclusively on Health & Safety Code Section 1771(r)(3).  It

24  does not.[4]  Plaintiffs' claims are premised primarily on allegations that the Residency Contracts

25

26  [4] Indeed Plaintiffs' opening brief does not mention Section 1771(r)(3) as a basis for certification.

27  *See* Mot. at 7-8.  Rather, Plaintiffs assert for the first time in their reply brief that application of

Case No.: 5:14-cv-00750-EJD

ORDER GRANTING MOTION FOR CLASS CERTIFICATION

28

are "refundable" under Sections 1771(r)(2). On appeal, the Ninth Circuit observed that Section 1771(r)(3) may also be applicable. *See* Mem. at 5 n.4, Dkt. No. 267. Under Section 1771(r)(3), a contract qualifies as "refundable" if the provider refers to the promise of repayment of residents' entrance fees using the term "refund," whereas under Section 1771(r)(2), a contract is "refundable" if the promise to repay is not conditioned on the resale of the unit. Unlike Section 1771(r)(3), Section 1771(r)(2) does not require evidence of a promise of repayment, and hence, does not require individualized proof. Indeed, this Court has already ruled as a matter of law that the Residency Contracts are "refundable" within the meaning of Section 1771(r)(2), and therefore subject to the refund reserve requirements of Section 1792.6. *See* Order Grant'g Defs.' Mots. to Dismiss at 17-18, Dkt. No. 88 ("The Court therefore concludes the Residency Contract is subject to the refund reserve requirements of Section 1792.6.").[5] This ruling still stands.[6] To the extent Defendants may be suggesting it does not, they are mistaken. Plaintiffs have consistently relied on Section 1771(r)(2) as a basis for their claims, including the UCL claims.[7] The applicability of Sections 1771(r)(2) and 1792.6 is capable of classwide resolution, and Defendants do not contend

---

Section 1771(r)(3) raises common questions under Rule 23(a)(2). Reply at 7-8.

[5] As to the DSS's different interpretation of Section 1771(r)(2), the Court stated: "although the Court will take judicial notice of the DSS Letter, the Court does not assume that the substance of the DSS Letter is necessarily correct." Order Grant'g in Part and Deny'g in Part Motions to Dismiss at 10, Dkt. No. 299.

[6] Defendants have not sought reconsideration of the ruling, although Defendant CRMLP has argued that the California Department of Social Services ("DSS") does not require CC-PA to maintain refund reserves under Section 1792.6. CRMPL's Mot. to Dismiss Third Amended Complaint at 3 n.3, Dkt. No. 282. CC-PA made similar assertions. *See* CC-PA' Mot. to Dismiss Third Amended Complaint at 5 n.2 and 29 n.10, 34, Dkt. No. 283.

[7] Section 1771(r)(2), however, is not a basis for the declaratory relief action. *See* Order Granting Defs.' Motions to Dismiss at 30 ("Second, to the extent that a justiciable controversy existed, the Court's earlier finding that the Residency Contract is a refundable contract under California law clarifies any ambiguity as to Defendants statutory obligations, rendering this claim unnecessary and duplicative."); and Order Grant'g in Part and Deny'g in Part Motions to Dismiss at 36 ("Plaintiffs are entitled to seek a declaration regarding the applicability of section 1771(r)(3) and its impact on the parties' rights and responsibilities. The declaratory relief claim is not duplicative of any other claim insofar as it is based on section 1771(r)(3).").

1    otherwise.

2         Moreover, the Court agrees with Plaintiffs that the applicability of Section 1771(r)(3) also

3    raises common questions for purposes of Rule 23(a)(2).  Plaintiffs rely on the language of their

4    contracts to show that the provider referred to the promise of repayment of residents' entrance fees

5    using the term "refund."  Plaintiffs contend that their contracts and those entered into by the class

6    repeatedly reference "refunds," and the contracts use the terms "refund" and "repayment"

7    seemingly interchangeably.  Reply at 7 (citing Dkt. No. 306-1 [Murphy Decl.] Ex. 3 [Merrigan

8    Residency Contract] at Sections 3.1.6 ("refund" used three times), 6.1 (five times), 6.2 (three

9    times), 6.3 (three times), 7.4, 8.4, 8.4.5, 9.1, 9.2, 9.3, 9.4, 9.5, 9.6.).  Plaintiffs also rely on CC-

10   PA's financial statements as evidence that the provider referred to the promise of repayment of

11   entrance fees using the term "refund."  *Id.* (citing Dkt. No. 312-1, Ex. E–O).  Whether the

12   language in the Residency Contracts and financial statements is sufficient to prove Section

13   1771(r)(3) applies such that Defendants must maintain a reserve fund is a factual and legal issue

14   suitable for classwide resolution; the answer to the question will "be so for all class members or

15   for none; their claims rise and fall together."  *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1115

16   (9th Cir. 2014).  If, as Plaintiffs contend, CC-PA "referred" to the promise of repayment as a

17   refund in the contracts and the financial statements, there is no need for individualized inquiries,

18   notwithstanding Defendants' assertion to the contrary.  *See* Opp'n at 12 ("The statute is plainly

19   aimed at individualized inquiries into whether each contract holder was privy to the claimed

20   "refund" representation.").  And if all class members were privy to the same "refund"

21   representation in the Residency Contracts, they arguably suffered the same injury due to the

22   alleged failure to maintain a reserve fund.  Defendants dispute Plaintiffs' assertion that the entire

23   class was privy to a "refund" representation in the Residency Contracts.  However, "a common

24   contention need not be one that 'will be answered, on the merits, in favor of the class."  *Stockwell*,

25   749 F.3d at 1112 (quoting *Amgen*, 568 U.S. at 459).  "To hold otherwise would turn class

26   certification into a mini-trial on the merits" and defeat the purpose of class certification.  *Id.*

27   Case No.: 5:14-cv-00750-EJD

     ORDER GRANTING MOTION FOR CLASS CERTIFICATION

28                                                                                              8

United States District Court
Northern District of California

1    (quoting *Ellis*, 657 F.3d at 983 n. 8).

2         Plaintiffs' claims for elder abuse and fraudulent transfer raise additional common questions

3    of law and fact.  The financial elder abuse claim raises common questions regarding, for example:

4    (i) whether Defendants took or retained Plaintiffs' and class members' property or assisted in

5    doing so; (ii) whether Defendants took or retained Plaintiffs' and class members' property for a

6    wrongful use or assisted in doing so; and (iii) whether Plaintiffs and class members were 65 years

7    of age or older at the time of Defendants' conduct.  The fraudulent transfer claim raises more

8    common questions of fact and law, including but not necessarily limited to:  (i) whether CC-PA

9    transferred property and incurred an obligation to CC-DG with the intent to hinder, delay, or

10   defraud one or more of its creditors; and (ii) whether Plaintiffs suffered harm as a result of alleged

11   fraudulent transfers of assets between CC-PA and CC-DG.

12        Defendants contend that Plaintiffs' elder abuse and fraudulent transfer claims do not raise

13   common questions because at least some members of the proposed class knew that CC-PA had

14   transferred or would transfer funds to CC-DG.  More specifically, Defendants contend that on

15   multiple occasions, CC-PA informed proposed class members of its financial structure, including

16   that there was no reserve for Entrance Fee repayments and that excess cash would be distributed to

17   its parent.  Individual defenses, however, do not defeat commonality.  *See Karim v. Hewlett-*

18   *Packard Co.*, 2014 WL 555934, at *7 (N.D. Cal. Feb. 10, 2014) ("HP argues that its individual

19   defenses to certain class members' claims defeats commonality, the court finds that hypothetical

20   defenses cannot be enough to defeat commonality."); *see also Stockwell*, 749 F.3d at 1114 n.3

21   ("The availability of such [individualized affirmative] defenses . . . is not pertinent to the

22   commonality question, as long as there is *a* common question as to the [plaintiffs'] prima facie

23   case . . . .") (emphasis in original); *Santomenno v. Transamerica Life Ins. Co.*, 310 F.R.D. 451,

24   461 (C.D. Cal. 2015) ("[C]ommonality is not defeated by the possibility that [a] claim requires a

25   more individualized inquiry to consider defenses against certain class members.").

26

27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING MOTION FOR CLASS CERTIFICATION
28                                        9

United States District Court
Northern District of California

**B.    Rule 23(b)(2) Requirement**

"Rule 23(b)(2) applies when a single, indivisible remedy would provide relief to each class member[.]" *Dukes*, 564 U.S. at 362. Here, Plaintiffs seek injunctive and declaratory relief on behalf of the proposed class as a whole. Among other things, Plaintiffs seek a declaration that the Residency Contracts are refundable within the meaning of the Health and Safety Code. Plaintiffs also seek a constructive trust decree. Further, Plaintiffs seek a permanent injunction requiring CC-PA to create and maintain a reserve in trust for the benefit of the class and requiring CC-DG to return funds so that they may be maintained in reserve. These types of remedies are uniformly available to all proposed class members if Plaintiffs prevail on their claims. *See e.g.*, Cal. Welf. & Inst. Code § 15657.5 (Where a defendant is liable for financial elder abuse, "compensatory damages and all other remedies otherwise provided by law" are available.); Cal. Civ. Code § 3439.07(a) (specifying that in an action for fraudulent transfer, a creditor may obtain avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as "[a]ny other relief the circumstances may require.").

Defendants' sole argument against certification under Rule 23(b)(2) is that "whether the Residency Contracts under Section 1771(r)(3) are repayable or refundable is not something that can be determined on a class wide basis." Opp'n at 22. As discussed previously, however, Plaintiffs rely primarily upon Section 1771(r)(2).

The Court finds that Rule 23(b)(2) is satisfied.

**C.    Rule 23(b)(3)**

The Rule 23(b)(3) predominance requirement is satisfied when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication. *Otsuka v. PoloRalph Lauren Corp.*, 251 F.R.D. 439, 447 (N.D. Cal. 2008) (citing *Hanlon*, 150 F.3d at 1019). The factors that support the commonality requirement also support the predominance requirement. Each member of the proposed class entered into Residency Contracts with substantially the same provision governing repayment of Entrance Fees. The case presents a

United States District Court
Northern District of California

1    common, core question:  whether CC-PA has a statutory duty to maintain a refund reserve—by

2    applying Section 1771.  And as discussed previously, the individualized issues, to the extent they

3    exist, do not preclude class certification.

4        Defendants contend, however, that a class cannot be certified under 23(b)(3) "[b]ecause

5    there are no damages here."  Opp'n at 22.  In response, Plaintiffs assert that they are entitled to

6    damages, but they make no attempt to show that damages are capable of measurement on a

7    classwide basis.  Absent such a showing, the predominance requirement cannot be satisfied.

8    *Comcast Corp. v. Behrend*, 567 U.S. 27, 35 (2013) (to satisfy the predominance requirement,

9    plaintiffs must show that "damages are capable of measurement on a classwide basis").

10       Plaintiffs argue in the alternative that even if damages are not available, courts may certify

11   classes under 23(b)(3) where UCL claims are asserted, citing *Smith v. Keurig Green Mountain,*

12   *Inc.*, 2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) and *Dickey v. Advanced Micro Devices, Inc.*,

13   2019 WL 251488 (N.D. Cal. Jan. 17, 2019).  Neither case, however, supports Plaintiffs' assertion.

14   The *Keurig* court recognized that predominance requires that "damages are capable of

15   measurement on a classwide basis," analyzed the plaintiffs' damages models, and ultimately

16   concluded that the plaintiffs had presented a plausible damages model.  *Keurig*, 2020 WL

17   5630051, at *9-10.  The *Dickey* court similarly recognized that predominance requires that

18   "damages are capable of measurement on a classwide basis."  *Dickey*, 2019 WL 251488, at *6.

19   Here, Plaintiffs have not made any attempt to show that damages are capable of measurement on a

20   class-wide basis.  Therefore, the predominance requirement for certification under Rule 23(b)(3)

21   has not been satisfied.

22   **IV.    CONCLUSION**

23       For the reasons discussed above, Plaintiffs' motion for class certification under Rule 23(a)

24   and 23(b)(2) is GRANTED.  The motion is DENIED in all other respects.  The parties are directed

25   to meet and confer regarding a schedule for the case, and if possible, submit a stipulation and

26   order.  In the event the parties are unable to reach an agreement, the parties shall file a joint

27   Case No.: 5:14-cv-00750-EJD
     ORDER GRANTING MOTION FOR CLASS CERTIFICATION

28                                                   11

United States District Court
Northern District of California

1    statement explaining their respective positions no later than August 20, 2021.

2        **IT IS SO ORDERED.**

3    Dated:  August 3, 2021

4                                                    _____
                                                     EDWARD J. DAVILA
5                                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    Case No.: 5:14-cv-00750-EJD
      ORDER GRANTING MOTION FOR CLASS CERTIFICATION
28                                                   12

United States District Court
Northern District of California